PEOPLE *v.* MANKIN.

1. PERJURY—INFORMATION—SUFFICIENCY.

In a prosecution for perjury, an information charging that defendant made false statements in an affidavit required by law to be used in obtaining a marriage license, that he knew they were false, and that in making them he "falsely, wickedly, corruptly, and feloniously did commit wilful and corrupt perjury," *held*, sufficient when read in its entirety, although it was not in the usual approved form.

2. SAME — INFORMATION MUST CHARGE DEFENDANT'S BELIEF IN FALSITY OF AFFIDAVIT WHERE MADE ON INFORMATION AND BELIEF.

Where the affidavit is made on information and belief, it is not sufficient for the information to merely charge its falsity, but it must also charge defendant's belief in its falsity, and an averment that he knew the real facts is sufficient.

3. SAME — TRIAL — INSTRUCTIONS AS TO ELEMENTS OF OFFENSE.

The refusal of requests to charge as to the essential elements of perjury, held, not reversible error, although they correctly stated the law, where they were not strictly applicable to the facts in the case, and the charge as given could not have misled the jury.

4. SAME — FORM OF AFFIDAVIT IMMATERIAL.

The omission of the words "so help you God," from the oath administered would not exempt the person taking the oath and swearing falsely from the pains and penalties of perjury, since said words are not required by the statute (3 Comp. Laws 1915, § 12568).

5. CRIMINAL LAW — MITIGATING CIRCUMSTANCES MAY NOT BE CONSIDERED BY APPELLATE COURT.

Mitigating circumstances may not be considered by the Supreme Court, on error, in a criminal case, but are matters which may properly be addressed to the trial judge.

Exceptions before judgment from Kalamazoo; Weimer (George V.), J.    Submitted October 11, 1923. (Docket No. 129.)    Decided December 19, 1923.

George W. Mankin was convicted of perjury.    Affirmed.

*Clare E. Hoffman*, for appellant.

*Stephen H. Wattles*, Prosecuting Attorney, for the people.

McDONALD, J.    The defendant was convicted of perjury on an information charging him with having

made false statements in an affidavit for a marriage license. The case is here on exceptions before sentence. The affidavit was made in the office of the county clerk at Kalamazoo. It set forth that the defendant and the girl he was about to marry both resided in the city of Kalamazoo, and that she was 16 years of age. Her mother, Rosa Brown, was present and signed a written consent to the marriage in which she gave her daughter's age as 16 years. It is the people's claim that the statements in the affidavit relative to the residence of the parties and the age of the girl were false; that in making the affidavit the defendant was guilty of perjury, and that Rosa Brown was also guilty in that she was present, aiding, advising and procuring the defendant to make the false statements. They were jointly charged and tried. The jury acquitted Mrs. Brown but convicted the defendant.

The first question presented by the record relates to the refusal of the court to quash the information and to discharge the defendant on the ground that it does not charge an offense. It is contended by counsel for the defendant that the information does not charge that he wilfully and corruptly made oath to false statements in the affidavit, that it does not allege that the statements therein made were material or necessary, and that the affidavit was to be used in any matter where an affidavit was required by law. The information sets out in full the affidavit; it then negatives the truth of the statements therein contained; charges that the defendant knew the truth as to the residence of the parties and the age of the girl, and concludes with the following statement:

"And so the said George W. Mankin and Rosa Brown at the time and place aforesaid and in manner aforesaid by their own act and consent and of their own most wicked and corrupt mind in manner and form aforesaid, falsely, wickedly, wilfully, corruptly,

and feloniously did commit wilful and corrupt perjury."

The information referring to the affidavit also alleges "each and every question and answer therein being then and there material and necessary and required by law to be made by an applicant for a license to wed before said license may be issued." This is a sufficient allegation as to the materiality of the statements made in the affidavit. While the information is not in the usual approved form, we think that, read in its entirety, it charges with sufficient certainty the elements that constitute the crime of perjury. In a disconnected way it substantially charges that the defendant made false statements in an affidavit required by law to be used in obtaining a marriage license, that he knew they were false and that in making them he, "falsely, wickedly, corruptly and feloniously did commit wilful and corrupt perjury."

It may be conceded that where an affidavit is made on information and belief, as this was, it is not sufficient for the information to charge its falsity, but it must also charge defendant's belief in its falsity. The information does this sufficiently in the averment that he knew the real facts.

"No indictment shall be quashed or deemed invalid, nor shall the trial, judgment or other proceedings thereon, be affected. * * *

"2. By reason of the omission of the word 'feloniously' or of the words 'with force and arms,' or any words of similar import; or

"3. By reason of omitting to charge any offense to have been committed contrary to the form of the statute or statutes; or

"4. By reason of any other defect or imperfection in matters of form which shall not tend to the prejudice of the defendant." 3 Comp. Laws 1915, § 15735.

We think the court was not in error in refusing to grant the defendant's motion to quash the information.

It is further claimed by counsel that the court failed to instruct the jury as to the essential elements of perjury, and that he erred in refusing to give the following requests:

"1. The offense consists in swearing falsely or corruptly without probable cause or belief, not in swearing rashly or inconsistently, according to belief. The false oath, if taken from inadvertence or mistake, cannot amount to voluntary or corrupt perjury.

"2. You cannot convict the respondent, George Mankin, unless you are satisfied, beyond a reasonable doubt, that he signed this affidavit, knowing what it contained and knowing that it contained a false statement."

Of this counsel says in his brief:

"Instead of giving these requests the court told the jury that we had a general statute for perjury which provided that if any person 'shall wilfully swear falsely' he would be guilty of perjury, and then proceeded to tell them that under the marriage law one who swore to a false statement was guilty of perjury, leaving out entirely the elements of wilfulness and also of knowledge. In other words, the jury were instructed that if any statement in this affidavit was false, respondent might be convicted, even though he did not know it to be false."

If the court had left the jury with the impression pointed out by counsel there would be much merit to his claim of error. But, immediately following the instruction complained of, the jury was told:

"It is the theory and claim of the people in this case that the respondents wickedly, wilfully and corruptly made false statements under oath in the affidavit for a marriage license, which has been introduced in evidence, regarding the residence of the parties and the age of the girl.  *  *  *.

"The claim of perjury is based upon alleged false statements regarding the age of the girl, namely, that she was sixteen, whereas in fact it is claimed she was under sixteen, and regarding the residence of the girl and the young man.  *  *  *

"Now that is all there is to this case. \* \* \* If you find that the respondents committed deliberate, wilful, corrupt, false swearing in the particulars claimed or any of the particulars claimed by the people, your verdict should be guilty as charged."

In view of the above instructions we think the jury could not have been misled into believing that if defendant merely made a false statement in the affidavit he would be guilty of perjury. The requests correctly stated the law, but they were not strictly applicable to the facts in this case. There was no claim and no evidence to support a claim that the oath was taken from inadvertence or mistake, or that defendant signed the affidavit not knowing that it contained false statements. It is undisputed that after the affidavit had been made out the clerk asked defendant to read it over to see that there was no mistake; that he also called his attention to a digest of the Michigan marriage laws which defendant read before taking the oath. In view of these facts and of the undisputed evidence as to the falsity of the statements and of defendant's knowledge as to their falsity, it was not reversible error to refuse to instruct the jury as requested.

Counsel further complains that the usual oath was not administered to defendant when he swore to the affidavit, that the words "So help you God" were omitted. We may agree with counsel that the words "So help you God" should be used, but that their omission exempts the person taking the oath from the pains and penalties of perjury, is another question. Our statute provides the following method of administering oaths in this State:

"The usual mode of administering oaths now practiced in this State, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except in the cases herein otherwise provided." 3 Comp. Laws 1915, § 12568.

It will be observed that this statute does not require any particular form for an oath; it provides only that the party shall swear holding up the right hand. The act of raising the right hand while taking an oath was originally adopted from the Roman practice. It was there required that one guilty of perjury should be branded on the right hand. When a person presented himself as a witness in a Roman court he was required to hold up the right hand so that the judge might see whether he had been branded for perjury. Needless to say the act of holding up the right hand while taking an oath has an entirely different significance in our practice. We have come to regard the uplifted hand accompanied by solemn swearing as an appeal to God for the truth of what the witness is about to testify. The words "You do solemnly swear" in and of themselves import a serious appeal to God. When addressed to the taker of an oath, who stands with uplifted hand, they signify that he is bound in conscience to tell the truth. Nothing further is necessary. While it might be the better practice to conclude the oath with the words "So help you God," we think they are not absolutely essential to its validity.

Counsel for the defendant has emphasized in his brief many mitigating circumstances which this court is not at liberty to consider. They are matters which may properly be addressed to the trial judge. Undoubtedly he will give them due consideration when he comes to impose sentence. Our examination of the record discloses no reversible error.

The conviction is therefore affirmed. The circuit judge will proceed to judgment.

FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred with McDONALD, J.

WIEST, C. J. I concur. While it is a time-honored

custom to close an administered oath with an appeal to God it is not an essential in form or substance. In olden time it was an essential. In the fourteenth century common oaths were in these words: "I will speak truth in what you ask of me in such a case; So God help me, and His holy evangelist." Mirrour of Justices, chap. 3, § 36. Under the Connecticut code of 1650 the oath to jurors ended: "So helpe you God, in our Lord Jesus Christe." In the Northwest Territory, under a law of the governor and judges, every person appointed to a civil office was required to take an oath ending with "So help me God." The form of oath of office prescribed by the Constitution of the United States to be taken by the president contains no such appeal to the Deity (U. S. Constitution, Art. 2, § 1, paragraph 8). Neither does the Constitution of this State require it in oaths of office (Constitution, Art. 16, § 2). 1 Best on Evidence, § 56 *et seq.,* gives an extended history of oaths.