AMTORG TRADING CORPORATION v. UNITED STATES.

UNITED STATES v. AMTORG TRADING CORPORATION et al.

Nos. 3616, 3617.

Court of Customs and Patent Appeals. Feb. 26, 1934.

Puckhafer & Rode, of New York City (George J. Puckhafer, of New York City, of counsel), for Amtorg Trading Corporation.

Charles D. Lawrence, Asst. Atty. Gen. (John F. Kavanagh, Sp. Atty., of New York City, of counsel), for the United States.

Albert MacC. Barnes, of New York City (Samuel M. Richardson and Kenneth F. Simpson, both of New York City, of counsel), amicus curiæ.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Certain matches of the strike-on-box type were exported from the Union of Socialist Soviet Republics and imported at the port of New York, in three entries, under the Tariff Act of 1922 (42 Stat. 858). The last importation was entered on May 28, 1930.

On May 19, 1930, the Secretary of the Treasury made and promulgated a finding of dumping under the Anti-Dumping Act of 1921 (19 USCA §§ 160–173), which finding is known as T. D. 44037, and which is as follows:

"Antidumping—Safety matches from Soviet Russia

"The Secretary of the Treasury makes a finding of dumping in the case of safety matches from Soviet Russia

"Treasury Department, May 19, 1930.

"To Collectors of Customs and Others Concerned:

"After due investigation in accordance with the provisions of section 201, Anti-Dumping Act, 1921, I find that the industry of manufacturing safety matches of the strike-on-box type in the United States is being, and is likely to be, injured by reason of the importation into the United States of safety matches of the strike-on-box type from the Union of Socialist Soviet Republics (Soviet Russia), and that such safety matches of the strike-on-box type are being sold, and are likely to be sold, in the United States at less than their fair value.

"A. W. Mellon,
"Secretary of the Treasury."

Proceeding under the authority of said dumping order, the ordinary appraisements of dutiable value were made, and an ascertainment of anti-dumping duty was made, as to the goods in each entry. Appeals to reappraisement were taken to the United States

Customs Court in each case. These included appeals as to the ordinary and usual appraisements of the goods in reappraisements 97872—A and 97991—A, and as to the dumping duty in all three reappraisements. The various reappraisements having been consolidated, were heard by Judge McClelland. Several witnesses were called and examined on the part of both the importer and the Government, including the Secretary of the Treasury and the Commissioner of Customs. During the course of the taking of testimony, a number of so-called "affidavits" were offered in evidence by the importer, and admitted.

During the taking of testimony, a motion was made on behalf of the Government to dismiss the appeal on the grounds that the importer, Amtorg Trading Corporation, was an agency of the Soviet Government, and, inasmuch as the Government of the United States had not, at that time, recognized the Soviet Government, that its agents and representatives had no right to appear in any of the courts of the United States as a party to any litigation therein. As to this matter, the single judge sitting in reappraisement held that the Amtorg Trading Corporation was shown by the record to be a corporation domiciled in and existing under the laws of the state of New York, and that it might legally appear in the United States Customs Court and prosecute its appeals to a conclusion; that no foreign value had been shown for the imported goods, and no cost of production; and that there was no evidence in the record from which it might be deduced that the Secretary of the Treasury was justified in issuing the dumping order complained of. In conclusion, and for the above-stated reasons, the court found that no dumping duty could properly be collected.

Appeals were duly prosecuted from this judgment to the Third Appellate Division. The division held that the alleged affidavits in the record were not, in fact, affidavits, and that they were not properly received in evidence. The theory upon which this holding was made, as we understand it, is that these affidavits were not upon oath as was, according to the view of the court, required by law. From this conclusion it was considered by the division that there was no evidence before the single judge in support of the proposition that no foreign value existed, and that, therefore, the appeal should have been dismissed upon the authority of United States v. Malhame & Co., 19 C. C. P. A. (Customs) 164, T. D. 45276.

The division also held that the finding of fair value under the Anti-Dumping Act of 1921. was within the discretion of the Secretary of the Treasury, and that his judgment on these matters could not be judicially disturbed. Therefore, the decision of the single judge was reversed, with directions to dismiss the appeal.

Both parties appeal to this court. The importer insists that the judgment of the Third Division was in error in holding that the affidavits might not be received in evidence, in not holding that no foreign value for home consumption in Russia had been shown for the goods in question, and in directing a dismissal of the importer's appeal to reappraisement.

On its part, the Government seeks a reversal upon the grounds of various rulings during the trial, which will sufficiently appear by the discussion of the case hereinafter to be made.

We shall first direct our attention to the argument stressed by amicus curiæ that the importer, appellant Amtorg Trading Corporation, has no right to appeal and sue herein; that said corporation, being an agent of the Union of Socialist Soviet Republics, a Government not recognized by the Government of the United States, had no more right to sue in our courts than did the said nonrecognized Government; that said Government could not so sue; that, therefore, the appeals for reappraisement herein should have been dismissed.

It is conceded by counsel, and the court will take judicial notice of the fact, that, at the time of the importations of the goods in issue, the United States Government had not recognized the Union of Socialist Soviet Republics of Russia, and that there was then no diplomatic interchange between said Governments. Oetjen v. Central Leather Co., 246 U. S. 297, 38 S. Ct. 309, 62 L. Ed. 726; Jones v. United States, 137 U. S. 202, 214, 11 S. Ct. 80, 34 L. Ed. 691; Underhill v. Hernandez, 168 U. S. 250, 18 S. Ct. 83, 42 L. Ed. 456; The Penza (D. C.) 277 F. 91.

As to the representative capacity of the Amtorg Trading Corporation, the record shows that, at the time of entry and hearing, this was a corporation, organized and doing business under the laws of the state of New York, with its domicile and principal place of business in said state; that the capital of the corporation consisted of $3,000,000, represented by 30,000 shares of $100 each; that this stock was held in trust by Peter A. Bogdanov, for the Bank of Foreign Trade of the Union of Socialist Soviet Republics; that said Bank of Foreign Trade was under the

control of the Soviet Government; and that its stock was distributed as to ownership between the Commissariat of Foreign Trade, a department of the Soviet Government, and several syndicates, industrial trusts, and mixed corporations. Bogdanov testified that some foreign capital was invested in some of these stocks.

The corporation has a board of seven directors, which are elected at meetings in the New York office. Bogdanov, as the trustee for the stock, is able to, and does, select these directors. In order to comply with the New York law, one of these directors is a citizen of the United States. The other six are citizens of the Soviet Government. Bogdanov was sent from Moscow by the Bank of Foreign Trade to the United States to take charge of the business of the corporation, to relieve one Bron, who had, up to that time, been in management of the corporation. The syndicates, trusts, and mixed organizations mentioned by Bogdanov as owning the stock of the Bank of Foreign Trade, are all generally supervised and regulated by the Soviet Government.

It appears, therefore, that the Amtorg Trading Corporation was under the direct control, through stock ownership, of the Soviet Government at the time the goods herein were imported. It must also be held, under the authorities, that said corporation was a citizen of the state of New York. Chicago & N. W. Railway Co. v. Whitton, 13 Wall. 270, 283, 20 L. Ed. 571; Case of the Sewing Mach. Companies, 18 Wall. 553, 575, 21 L. Ed. 914; Mississippi & R. River Boom Co. v. Patterson, 98 U. S. 403, 407, 25 L. Ed. 206; Doctor v. Harrington, 196 U. S. 579, 586, 25 S. Ct. 355, 357, 49 L. Ed. 606.

This rule of law as to citizenship was one which was the result of difficulties arising from suits begun in the courts of the United States by citizens of one state against corporations domiciled in other states, where certain of the stockholders were not citizens of the state in which the corporation had its domicile. Under the Constitution, article 3, § 2, the federal courts had jurisdiction of such cases, only if the parties were "citizens of different states." Hence the citizenship of the shareholders became important.

The development of the present conception of corporate citizenship is well summed up by Mr. Justice McKenna, speaking for the court, in Doctor v. Harrington, supra:

"The reason of the presumption (we will so denominate it) was to establish the citizenship of the legal entity for the purpose of jurisdiction in the Federal courts. Before its adoption difficulties had been encountered on account of the conditions under which jurisdiction was given to those courts. A corporation is constituted, it is true, of all its stockholders; but it has a legal existence separate from them,—rights and obligations separate from them; and may have obligations to them. It can sue and be sued. At first this could be done in the circuit court of the United States only when the corporation was composed of citizens of the state which created it. Bank of United States v. Deveaux, 5 Cranch, 61, 3 L. Ed. 38; Hope Ins. Co. v. Boardman, 5 Cranch, 57, 3 L. Ed. 36. But the limitation came to be seen as almost a denial of jurisdiction to or against corporations in the Federal courts, and in Louisville, etc., Railroad Co. v. Letson, 2 How. 497, 11 L. Ed. 353, prior cases were reviewed, and this doctrine laid down:

" 'That a corporation created by and doing business in a particular state is to be deemed, to all intents and purposes, as a person, although an artificial person, * * * capable of being treated as a citizen of that state, as much as a natural person.' And 'when the corporation exercises its powers in the state which chartered it, that is its residence, and such an averment is sufficient to give the circuit courts jurisdiction.'

"The presumption that the citizenship of the corporators should be that of the domicil of the corporation was not then formulated. That came afterwards, and overcame the difficulty and objection that the legal creation, the corporation, could not be a citizen within the meaning of the Constitution. Marshall v. B. & O. Railroad Company, 16 How. 314, 14 L. Ed. 953. This, then, was its purpose, and to stretch beyond this is to stretch it to wrong. It is one thing to give to a corporation a status, and another thing to take from a citizen the right given him by the Constitution of the United States. Disregarding the purpose of the presumption, it is easy to represent it, as counsel does, as illogical if not extended to every stockholder; but as easy it would be to show its falseness if so applied. But such charges and countercharges are aside from the question. To the fact and place of incorporation the law attaches its presumption for a special purpose. Perhaps, as intimated in St. Louis & San Francisco Ry. v. James, 161 U. S. 545, 563, 16 S. Ct. 621, 40 L. Ed. 802, 808, this 'went to the verge of judicial power.' Against the further step urged by appellees we encounter the Constitution of the United States."

We must conclude that the Amtorg Trading Corporation was, in all things, complying with the laws of the state of New York. It was, therefore, a citizen of that state, invested with the right to sue and be sued in the courts of the country.

It is argued, however, that the courts in certain cases may "pierce the veil" and may reach and investigate the character of the incorporators and stockholders. A leading case cited is United States v. Lehigh Valley R. R. Co., 220 U. S. 257, 31 S. Ct. 387, 55 L. Ed. 458. That case was a sequel to the commodities cases, decided in United States v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836. In those cases, suits both in equity and mandamus were brought by the United States to prohibit certain railroad companies from transporting coal in interstate commerce in violation of the Hepburn Act of June 29, 1906 (34 Stat. 584). It was claimed that said railroads were transporting coal mined by dummy corporations, all of the capital stock of which was owned, and the corporations operated by, and for the benefit of, the railroad companies. The court held that, for the purposes of the litigation, it might investigate the circumstances, that the purposes of the act might be carried out, and that the carriers might not be permitted to do by indirection what they might not do directly.

In this connection, Bank of United States v. Deveaux, 5 Cranch, 61, 89, 3 L. Ed. 38, is urged upon our attention as upholding the rule that the court will look beyond the corporation to the persons of those who compose it. As we have seen, Doctor v. Harrington, supra, states that the views held when the Deveaux Case was decided, have not been followed. Mr. Justice Wayne, in Louisville, C. & C. R. R. Co. v. Letson, 2 How. 497, 555, 11 L. Ed. 353, in an interesting discussion of the subject, mentions the regret which Chief Justice Marshall frequently expressed concerning the conclusion which was reached by the court and expressed by him in the Deveaux Case.

A very interesting case on the subject is Home Fire Insurance Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 1032, 60 L. R. A. 927, 108 Am. St. Rep. 716. Discussing the question now before us, the court said:

" * * * Accordingly, courts and textwriters have been in entire agreement that equity will look behind the corporate entity, and consider who are the real and substantial parties in interest, whenever it becomes necessary to do so to promote justice or obviate inequitable results. * * *

"Cases of this kind must be differentiated sharply from those where the proceeding is at law, or where a question of title to the corporate property is involved. There is no question that stockholders, as such, have no title to the corporate property which they can convey or incumber in their own names. * * *

"Hence, we think the rule to apply to such cases is this: Where a corporation is proceeding at law, or where it is asserting a title to property, or the title to property is involved, the corporation is regarded as a person separate and distinct from its stockholders, or any or all of them. But where it is proceeding in equity to assert rights of an equitable nature, or is seeking relief upon rules or principles of equity, the court of equity will not forget that the stockholders are the real and substantial beneficiaries of a recovery, and if the stockholders have no standing in equity, and are not equitably entitled to the remedy sought to be enforced by the corporation in their behalf and for their advantage, the corporation will not be permitted to recover."

We think it may be safely stated that in those cases where the court has gone behind the corporate entity, and has considered the real parties in interest, there has been some equitable remedy required or some matter of public policy involved. In other cases, the courts have not done so. Stone v. Cleveland, etc., R. Co., 202 N. Y. 352, 95 N. E. 816, 35 L. R. A. (N. S.) 770; Salvin v. Myles Realty Co., 227 N. Y. 51, 124 N. E. 94, 6 A. L. R. 581; Elenkrieg v. Siebrecht, 238 N. Y. 254, 144 N. E. 519, 34 A. L. R. 592; Berkey v. Third Ave. Ry. Co., 244 N. Y. 84, 155 N. E. 58, 50 A. L. R. 599.

It is argued that, inasmuch as various agencies of the Union of Socialist Soviet Republics own the stock and control the operation of the Amtorg Trading Corporation through such ownership, the corporation must be treated as a part of the Soviet Government itself. We cannot, however, come to this conclusion. In this proceeding, which is purely statutory, we are not concerned with the ownership of the stock, nor does it make any difference where the stockholders reside. City of St. Louis v. Wiggins, etc. Co., 40 Mo. 580, 590. The character of the corporation, and its powers and responsibilities, depend upon the place where the charter was granted. Harley v. Charleston Steam-Packet Co., 2 Miles (Pa.) 249.

When a government becomes a stockholder in a corporation, it does not exercise

its sovereignty as such. "It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation than are expressly given by the incorporating act." Bank of Kentucky v. Wister, 2 Pet. 318, 324, 7 L. Ed. 437; Briscoe v. Bank of Kentucky, 11 Pet. 257, 326, 9 L. Ed. 709; Moore v. Board of Trustees, 7 Ind. 462; Bank of U. S. v. Planters' Bank, 9 Wheat. 904, 6 L. Ed. 244. Nor does the fact that the government may own all or a majority of the capital stock take from the corporation its character as such, or make the government the real party in interest. United States ex rel. Skinner & Eddy Corp. v. McCarl, 275 U. S. 1, 48 S. Ct. 12, 72 L. Ed. 131; Sloan Shipyards Corp. v. U. S. Em. Fleet Corp., 258 U. S. 549, 42 S. Ct. 386, 66 L. Ed. 762; United States v. Strang, 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368; Commercial Pac. Cable Co. v. Philippine Nat. Bank (D. C.) 263 F. 218.

Two cases are cited by amicus curiæ which are thought to support the proposition that the Amtorg Trading Corporation has no right to sue in the courts of the United States. The first of these is Russian Socialist Federated Soviet Republic v. Cibrario et al., 235 N. Y. 255, 139 N. E. 259. There the court held that the unrecognized Soviet Government might not so sue; that a foreign power brings an action in our courts not as a matter of right, but as the result of comity; that where no such comity exists, then such foreign power has no right to appear in our courts as a litigant; that, as a matter of law, there is no such party litigant.

The second case cited is The Penza (D. C.) 277 F. 91. In this case the Russian Socialist Federated Soviet Republic, and one Martens, an agent and representative thereof, filed a libel on behalf of the Soviet Government against two steamers, known as the Penza and Tobolsk, claiming that they were detained illegally from the possession of the libelants. The District Court held, on exception, that the libelant could not sue, the Soviet Government not having been recognized, and dismissed the libel.

These cases do not dispose of the issue here. They simply recognize what seems to be the rule, that only a recognized foreign government has a standing in our courts, as is indicated in cases such as The Sapphire, 11 Wall. 164, 20 L. Ed. 127.

In the two cases above discussed, the suitor was neither a person nor a corporation. In the case before us, the suitor is a corporation and, as such, is, in all legal aspects, a citizen of the state of New York.

An authoritative case is Amtorg Trading Corp. (the appellant here) v. New York Indemnity Co., 256 N. Y. 671, 177 N. E. 187. In that case, suit was brought by the plaintiff to recover for a loss under a policy of burglary insurance. In the trial court, in the answer to the complaint, the defendant pleaded the ownership of plaintiff by the Soviet Government of Russia, and that because such Government was not recognized by the Government of the United States at that time, the plaintiff had no right to sue and recover. The trial judge charged the jury that the plaintiff had a right to so sue. Judgment was rendered for the plaintiff.

The Appellate Division of the Supreme Court affirmed the judgment, without opinion, 229 App. Div. 772, 242 N. Y. S. 811. On further appeal to the Court of Appeals, the judgment was again affirmed without opinion. An examination of the briefs of both counsel in the Court of Appeals discloses that the said right of the plaintiff to sue was fully argued in the Court of Appeals.

The decision in the cited case may, therefore, be considered as in harmony with the views herein expressed.

In Amtorg Trading Corp. v. Commissioner of Internal Revenue, 65 F.(2d) 583, the Circuit Court of Appeals of the Second Circuit exercised jurisdiction to final judgment. It is true, the exact point here at issue does not seem to have been raised there, but the nature and organization of the petitioner, and the nonrecognition of the Soviet Government, were known to the court and freely discussed in the opinion rendered.

Our conclusion upon this phase of the case is that the Amtorg Trading Corporation might properly appeal to reappraisement and seek its remedy in the trial court and here, and that the motion of the Government to dismiss was properly overruled.

The next error complained of which requires our attention is the ruling of the Appellate Division that certain alleged affidavits, offered in evidence by the importer, should be excluded and not considered by the court.

Exhibit 8 is typical of these so-called "affidavits." Its general form is as follows:

"City of Moscow, May 15, 1930.

"I, Michael Michailovich Soloviov, permanently residing in the City of Moscow, 10

Kurbatovsky, Pereulok, Apartment 11, solemnly testify as follows:"

A statement of facts then follows. The statement is signed "Soloviov," and then appears the following notarial statement:

"I, the undersigned, Nikifor Matveevich Talaiko, Notary of the Moscow Circuit Court, hereby testify that this declaration has been made in my presence and signed in his own hand by Citizen Soloviov, Michael Michailovich, and I certify that this declaration before a Notary is in every legal respect equivalent to "testimony under oath" as in force under legislations of other countries, and that the consequences of false statement in the form mentioned are the same as in the case of perjury before a court of law, i. e., criminal prosecution, and that the deponent is warned by the Notary beforehand concerning the significance of a statement before a Notary and **the legal consequences thereof.**

"Fees received: Notarial, 50 kopeks, and local, 50 kopeks, entered under receipt No. 31669.

"City of Moscow, May 15, 1930, No. 26486.

"[Signed]  Talaiko, Notary.
"Seal: 'State Notarial Office of the City of Moscow.' "

This certificate has attached thereto the following certificates:

"Consular Division of the People's Commissariat for Foreign Affairs certifies the authenticity of the signatures of the Notary Talaiko.

"Moscow, May 31, 1930.
"[Signed] Melamed,
"Manager of the Consular Division.
"No. 3345.
"Seal: 'People's Commissariat for Foreign Affairs.'
"Stamp: 'Consular Division, People's Commissariat for Foreign Affairs, 10% Red Cross Fee Collected.'
"Seal: 'German Embassy at Moscow.'
"Vised in the German Embassy at Moscow in certification of the signature of the Acting Manager of the Consular Division of the People's Commissariat of Foreign Affairs, Melamed.
"Moscow, June 3, 1930.
"German Ambassador entrusted with the Affairs of the German Embassy, per
"[Signed]  Pfeifer,
"Legation Secretary of the German Embassy.
*   *   *   *   *   *   *   *   *   *

"It is hereby certified that the foregoing document has been authenticated by the German Embassy at Moscow in conformity with the laws of Germany.
"Washington, D. C., March 17, 1931.
"The German Embassy,
"By R. Leitner,
"Chargé d'Affaires of Germany."

Finally, there is appended the certificate of Henry L. Stimson, Secretary of State, that R. Leitner was at the time of signing said certificate chargé d'affaires ad interim for Germany at Washington.

Some of these documents omit the words "solemnly testify as follows," in the preamble. As has been said, these affidavits were held to be inadmissible in evidence, by the division, because they were not sworn to, and were not, as it was thought, affidavits in form.

Section 501 of the Tariff Act of 1922 (19 USCA § 381) provides in part, when outlining the procedure before the single general appraiser, now judge of the United States Customs Court: "In finding such value affidavits of persons whose attendance cannot reasonably be had  *  *  *  may be considered."

No meaning other than the ordinary one is here imputed to the word "affidavit." What, then, in its ordinary signification, is an "affidavit"? Black's Law Dictionary (3d Ed.), 73, thus defines it: "A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath."

Confirming this definition are 1 Words and Phrases, First Series, p. 240; Bouv. Law Dict. (1897), vol. 1, p. 111; Corpus Juris, vol. 2, p. 317; Webster's New International Dictionary (1932).

That an affirmation is equivalent to an oath is well settled. The Constitution makes it such in the oath of the President, article 2, § 1; when the Senate tries impeachments, article 1, § 3; and in the oaths of state and United States officers, article 6.

Section 1, c. 1, title 1, Revised Statutes (1 USCA § 1), provides: "A requirement of an 'oath' shall be deemed complied with by making affirmation in judicial form."

There is no specific form in which an affidavit must be drawn, under this statute. The certificates attached show that the statements here in question were taken before officers having authority, under the laws of the Soviet Government, to take them. They were,

therefore admissible and should have been considered by the court.

▮ What, if any, weight should be given to the statements contained therein was a matter for the division to determine. Oceanic Trading Co. v. United States, 21 C. C. P. A. (Customs) 146, T. D. 46478; May Co. v. United States, 17 C. C. P. A. (Customs) 190, T. D. 43644. If they were relevant, they were admissible. Downing & Co. v. United States, 16 Cust. App. 293, T. D. 42873. As they were not rejected on the grounds of irrelevancy, but upon their form, that point need not further be considered.

It follows, from what has been said, that the Third Division was in error in not considering said affidavits.

While we might content ourselves with the above observations, it would appear to be desirable that the court below, in a retrial of the issues, have our views upon another point raised by counsel for the importer, namely, that the dumping order issued by the Secretary of the Treasury herein, was, and is, invalid. On this record and on the issues presented before us, we are unable to agree with counsel in this respect. Our general view of the administration of the Anti-Dumping Act of 1921 is stated in our recent decisions in Kleberg & Co. v. United States, 71 F.(2d) 332, 21 C. C. P. A. (Customs) 110, T. D. 46446, and Tower & Sons v. United States, 71 F.(2d) 438, 21 C. C. P. A. (Customs) ——, T. D. 46943. Further comment on this point seems, therefore, to be unnecessary.

In view of these conclusions, the judgment of the United States Customs Court, Third Division, is reversed, and the cause is remanded for further proceedings in conformity herewith.