**In the Matter of James E. BENNETT, Bankrupt.**

**No. 20547.**

United States District Court
W. D. Michigan, S. D.
Nov. 14, 1963.

424

Maurice E. Williams, Detroit, Mich., for petitioner.

Stanley, Davidoff & Long and David Davidoff, Kalamazoo, Mich., for respondent.

STARR, Senior District Judge.

The Manufacturers National Bank of Detroit has filed a petition for review of an order of the referee in bankruptcy entered August 3, 1962, ordering the bank to turn over to the trustee of the bankrupt's estate the sum of $1,851.87.

It appears that on June 15, 1961, the bankrupt, a resident of Calhoun county, Michigan, purchased a Chevrolet automobile from Merollis Chevrolet Sales and Service in Detroit and executed and delivered to the seller a chattel mortgage on the automobile. The chattel mortgage contained an affidavit reading as follows:

"State of Michigan ⎫
⎬ ss:
County of Wayne ⎭

"James E. Bennett being first duly sworn deposes and says that he is the Buyer and Mortgagor named in the above instrument and has knowledge of the facts; that the consideration for said instrument was actual and adequate; that the same was given in good faith and for the purposes therein set forth; AND THE UNDERSIGNED ACKNOWLEDGES DELIVERY AND RECEIPT OF AN EXACT COPY OF THIS INSTRUMENT AT THE TIME OF ITS EXECUTION.

"Subscribed and sworn to before me this 15th day of June, 1961.

"Roy W. Peterson, Jr.
Notary Public, Wayne County, Mich.
My Commission expires June 22, 1963."

James E. Bennett
Buyer."

On June 21, 1961, the Manufacturers National Bank purchased the chattel mortgage from Merollis Sales, and it was filed in the office of the register of deeds of Calhoun county on June 21st. On December 21, 1961, the bank took pos-

session of the automobile and sold it at chattel-mortgage-foreclosure sale on January 18, 1962. The mortgagor, James E. Bennett, had filed a voluntary petition in bankruptcy and been adjudged a bankrupt on January 2, 1962.

It appears that Reish's Shoe Store and Dr. David E. Boswell extended credit to the bankrupt in the interim between the execution of the chattel mortgage in question on June 15, 1961, and December 21, 1961, when the bank took possession of the automobile, and that both creditors remained unpaid at the time the bankruptcy petition was filed.

On February 16, 1962, the trustee in bankruptcy filed a petition alleging that the chattel mortgage in question was void as against the trustee, because the affidavit annexed to the mortgage "that the consideration for said instrument was actual and adequate; (and) that the same was given in good faith for the purposes therein set forth" had not been sworn to, as required by the State law. In pursuance of said petition the referee entered an order February 20, 1962, directing the bank to show cause why the chattel mortgage should not be held invalid as against the trustee and why the bank should not be required to turn over to the trustee the proceeds which it had realized from the sale of the automobile after it repossessed and sold it in foreclosure of the chattel mortgage.

At the hearing on the order to show cause testimony was taken before the referee, and on August 3, 1962, the referee filed findings of fact and conclusions of law, holding that no oath had been administered by the notary public at the time the good-faith affidavit on the chattel mortgage was signed by the bankrupt and, therefore, that the chattel mortgage was void as against the trustee in bankruptcy. The referee ordered the bank to turn over to the trustee the sum of $1,851.87, which it had realized from the sale of the automobile over and above the expenses of $158.13 incident to the foreclosure sale. The referee's order further provided that the bank could file its proof of claim as an unsecured creditor of the bankrupt.

The questions presented on this petition for review are: (1) Did the referee in bankruptcy have summary jurisdiction to order the bank to turn over to the trustee the money in its possession which it had realized from the sale of the automobile? and (2) was the good-faith affidavit annexed to the chattel mortgage sworn to by the mortgagor as required by the State law?

The court holds that the referee in bankruptcy had summary jurisdiction to order the bank to turn over to the trustee the money in its possession which it had realized from the sale of the automobile.

To determine whether the good-faith affidavit annexed to the chattel mortgage was properly sworn to by the mortgagor requires consideration of the State statutes relating to chattel mortgages and the administering of oaths, and also examination of the testimony of the notary public who signed the affidavit.

The Michigan chattel-mortgage-filing statute, Comp.Laws 1948, § 566.140 as amended by Act No. 106, Pub.Acts 1961, provides as follows:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor * * * unless the mortgagor or mortgagee named in such mortgage or conveyance intended to operate as a mortgage, or some person having knowledge of the facts *shall, before the filing of the same, make and annex thereto an affidavit setting forth that the consideration of said instrument was actual and adequate, and that the same was given in good faith for the purposes in such instrument set forth;* except that no defect in

the affidavit shall make any mortgage heretofore or hereafter filed void as against the creditors of the mortgagor * * * if the consideration of the instrument was actual and adequate and was given in good faith for the purposes set forth in the instrument. No officer shall receive such instrument or file the same in his office until such affidavit is made and annexed thereto."

The State statute relating to oaths and affidavits, Comp.Laws Mich.1948, § 617.83, provides as follows:

"Whenever any oath or affidavit is or may be required or authorized by law in any cause, matter or proceeding, except oaths to witnesses and jurors in the trial of a cause, and such other oaths as are or may be required by law to be taken before particular officers, the same may be taken before any justice, judge or clerk of any court of record, circuit court commissioner, notary public, or justice of the peace."

Comp.Laws Mich.1948, § 617.80, relating to the administering of oaths, provides as follows:

"The usual mode of administering oaths now practiced in this state, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except in the cases herein otherwise provided."

Roy W. Peterson, Jr., a salesman for Merollis Chevrolet Sales and Service, who sold the automobile in question to the bankrupt, was a duly authorized notary public. He testified as to what he did as a notary public at the time the bankrupt signed the chattel mortgage and the good-faith affidavit annexed thereto, as follows:

"Q. (Mr. Peterson) will you describe the transaction to the court briefly as to what took place at that time?

"A. * * * Mr. Bennett came in—I believe this was on a Saturday —Saturday a. m., and, of course, prepared to take delivery on his car and transfer the plates from his old car to the new car which he purchased, which was a demonstrator, a 1961 Chevrolet convertible. Then, of course, he signed the Secretary of State's form, which is called RD– 108. He signed his title application and then signed his mortgage contract, which I tore off the top part, which is the original copy, and notarized his signatures.

"Q. * * * As to that specific point, as to notarization, let's cover that. Exactly how did that take place?

"A. Well, right in front of the customer. We don't swear a customer in. We let the customer know we are the notary and we are notarizing his signature, and that it is his signature. * * *

"Q. Mr. Peterson, do you recall exactly whether Mr. Bennett raised his hand at this particular occasion?

"A. * * * No, he did not.

"Q. Did you indicate to him in any way that you were a notary public or did you make a statement to him, and if so, tell the court what was said.

"A. Well, upon the signing of these signatures, when I signed it, I said, 'I am signing as notary public and notarizing your signature, and that is your signature, James?' And he says, 'Yes.' * * *

"Q. And you did not swear him as to the contents of Exhibit 1, as to the truth of those statements?

"A. Well, all I did was notarize his signature. The truth of what statements? He hasn't made any statements. * * *

"I was a notary and I was signing that this is his official signature and he had signed it. * * *

"Q. Did you ask him whether or not he was making affidavit that the instrument was given in good faith?

"A. No, but I did tell him to read it and know what he was signing, and pointing to the fact he doesn't

have insurance on the car. He read it. After he got through reading it, then I signed my signature.

"Q. Did you ask him whether or not he was signing that the consideration for the instrument was actual and adequate?

"A. No, I did not. I just had him read it, that's all. * * *

"Q. As a matter of fact, Mr. Peterson, you didn't ask him to swear to anything, did you?

"A. No. * * *

"Q. (By the Court): * * * Did you discuss with him any of the contents of that affidavit?

"A. No, sir, I just told him to read it. * * *

"MR. DAVIDOFF: Would it make any difference to you as a notary public whether he read it or not?

"A. Not as long as he knows what he is getting. I insist they know the balance and the payment, and of course, they have already seen the car they're purchasing before they sign these. * * *

"Q. (By the Court): In this particular instance, do you remember if you asked Mr. Bennett to read the affidavit itself?

"A. Not the affidavit itself, I know, because I never used that phrase, your Honor."

Under the Michigan chattel-mortgage-filing statute, § 566.140, hereinbefore quoted the chattel mortgage here in question executed by the bankrupt as mortgagor would be absolutely void as against his creditors unless he made and annexed thereto an *affidavit* setting forth that the consideration for the mortgage was actual and adequate and that it was given in good faith for the purposes set forth. The State statutes relating to affidavits and oaths provide that any oath or affidavit required by law may be taken before a notary public and that the usual mode of administering oaths now practiced in this State, by the person who swears holding up his right hand, shall be observed in all cases in which an oath may be administered by law.

It is clear that under the State law Peterson, the notary public, was required to administer an oath to Bennett, the mortgagor, who executed the good-faith affidavit attached to the chattel mortgage, but examination of the testimony of the notary clearly shows that he did not administer any oath to the mortgagor. He merely signed the affidavit as a notary public to attest the mortgagor's signature. We again call attention to his testimony hereinbefore quoted:

"Q. Did you ask him whether or not he was signing that the consideration for the instrument was actual and adequate?

"A. No, I did not. I just had him read it, that's all. * * *

"Q. As a matter of fact, Mr. Peterson, you didn't ask him to swear to anything, did you?

"A. No."

■ An oath is defined in Black's Law Dictionary, 4th ed., p. 1220, as follows:

"Oath. * * * An external pledge or asseveration, made in verification of statements made, or to be made, coupled with an appeal to a sacred or venerated object, in evidence of the serious and reverent state of mind of the party, or with an invocation to a supreme being to witness the words of the party, and to visit him with punishment if they be false."

■ Black's Law Dictionary, page 80, defines an affidavit as follows.

"Affidavit. A written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before an officer having authority to administer such oath."

In Michigan Trust Co. v. Luton, 267 Mich. 547, 552, 255 N.W. 351, 353, the court said:

"*Affidavits are valid if properly sworn to*, even though not signed by the affiant."

In re Central Stamping & Mfg. Co., D.C., 77 F.Supp. 331, 332, the court said:

"Nowhere in the Michigan statute does it appear that the affidavit must be signed by the affiant. He must make the affidavit, *he must swear to it, and the fact of his swearing must be certified by a proper officer.*"

In People for use of Esper v. Burns, 161 Mich. 169, 175, 125 N.W. 740, 742, it is stated:

"An affidavit is a sworn statement reduced to writing, and evidenced by the fact that it has been subscribed and sworn to before some officer having authority to administer oaths. Any other definition would make the requirement concerning annexation idle. It was clearly the duty of the mortgagee if he wished to take advantage of the statute to see that all its requirements had been complied with, and, if the mortgagee is content, as in this case, to take chances in that regard, and to leave it to the mortgagor, and the mortgagor does not comply with the statutory requirements, then the mortgagee should suffer the consequences, and not the creditor who seeks to collect his judgment."

In re Beecher, D.C., 50 F.Supp. 530, 531, the court stated:

"It will be noted that the farm-debtor has not sworn to the affidavit. * * *

"In the first place, it isn't an affidavit as required by the statute. The absence of an oath takes it out of that category. Ballentine, in his Law Dictionary, defines an affidavit as 'any voluntary ex parte statement reduced to writing and sworn to or affirmed before some person legally authorized to administer an oath or affirmation.' See, also, 1 R.C.L. 761, and Amtorg Trading Corporation v. United States, Cust. & Pat.App., 71 F.2d 524, 529; United States v. Glasener, D.C., 81 F. 566; Robinson, Thieme & Morris v. Whittier, 112 Wash. 6, 191 P. 763."

In People v. Mankin, 225 Mich. 246, 251, 196 N.W. 426, 428, the court stated:

"Our statute provides the following method of administering oaths in this State:

" 'The usual mode of administering oaths now practiced in this State, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except in the cases herein otherwise provided.' 3 Comp.Laws 1915, § 12568.

"It will be observed that this statute does not require any particular form for an oath; it provides only that the party shall swear holding up the right hand. The act of raising the right hand while taking an oath was originally adopted from the Roman practice. It was there required that one guilty of perjury should be branded on the right hand. When a person presented himself as a witness in a Roman court he was required to hold up the right hand so that the judge might see whether he had been branded for perjury. Needless to say the act of holding up the right hand while taking an oath has an entirely different significance in our practice. We have come to regard the uplifted hand accompanied by solemn swearing as an appeal to God for the truth of what the witness is about to testify. The words 'You do solemnly swear' in and of themselves import a serious appeal to God. When addressed to the taker of an oath, who stands with uplifted hand, they signify that he is bound in conscience to tell the truth. Nothing further is necessary. While it might be the better practice to conclude the oath with the words 'So help you God,' we think they are not absolutely essential to its validity."

In 2 C.J.S. Affidavits § 20, p. 959, it is stated: "The requirement that an oath be administered is inherent in the very definition of an affidavit * * * so that

not only is the administration of an oath essential to the validity of the instrument but also it is essential to constitute the paper an affidavit."

In 3 Am.Jur.2d, Affidavits, pp. 381, 389, it is stated:

"An affidavit differs from an acknowledgment of an instrument in that an affiant vouches, by oath or affirmation, that what is said in the affidavit is true, while an acknowledgment is a manner of authenticating an instrument by showing that it was the free deed and act of the person executing it. * * *

"In accordance with the definition of an affidavit, it is essential to the validity of an affidavit that it be sworn to, or affirmed before, some officer authorized to administer oaths or affirmations. There must be something which amounts to the administration of an oath or affirmation, and this requires concurrent action on the part of the affiant and an authorized officer. Either the oath must be administered by the officer to the affiant, or asseveration must be made to the truth of the matters contained in the affidavit by the party making it, to the officer, with the latter's consent. * * *

"To make a valid oath or affirmation, there must be some overt act which shows that there was an intention to take an oath or affirmation on the one hand and an intention to administer it on the other; mere intention, not accompanied by an unambiguous act, is insufficient."

▆ In the present case the testimony of the notary clearly shows that he did not administer an oath to the mortgagor that the consideration for the mortgage was actual and adequate and that it was given in good faith for the purposes set forth. The only thing the notary did was ascertain that the mortgagor's signature was his own. As no oath was administered to the mortgagor as to the truth of the facts stated in the annexed good-faith affidavit, it is clear that there was no legal affidavit annexed to the chattel mortgage as required by law. Therefore, the mortgage was not entitled to be recorded and was void as to creditors of the bankrupt mortgagor and void as to the trustee in bankruptcy.

In 1961 the State legislature by Pub. Act No. 106 amended § 566.140, Comp. Laws 1948, by adding the provision that "no defect in the affidavit shall make any mortgage heretofore or hereafter filed void as against the creditors of the mortgagor * * * if the consideration of the instrument was actual and adequate and was given in good faith for the purposes set forth in the instrument." It appears that the consideration for the chattel mortgage here in question was actual and adequate and that it was given in good faith for the purposes set forth therein. However, the law required that an affidavit be annexed to the chattel mortgage before filing, but as no oath was administered to the mortgagor who signed the affidavit, there was no valid affidavit. The amending statute clearly applies only to clerical defects in a valid affidavit. The legislature certainly did not intend by the amendment to validate an affidavit attached to a chattel mortgage where the requisite oath had not been administered to the mortgagor signing the affidavit. To hold with the bank's contention that the affidavit in the present case was valid, though not sworn to, would nullify the applicable Michigan statutes and would make all affidavits useless by placing them on a par with merely signed-and-witnessed statements.

The State statute, § 617.80, requires that the usual mode of administering oaths practiced in this State shall be by the person who swears holding up his right hand and swearing to the truth of the facts stated in the affidavit. In the present case the bankrupt as mortgagor did not raise his right hand and no oath was administered to him as to the truth of the facts stated in the affidavit. In summary, there was no valid affidavit annexed to the chattel mortgage, and the mortgage was void as to creditors of the mortgagor and, under § 70, sub. e of

the Bankruptcy Act, 11 U.S.C. § 110, sub. e, was void as to the trustee in bankruptcy.

The court has examined the several authorities cited by the bank in support of its contentions and finds that such authorities are distinguishable on the basis of the facts involved and the legal questions presented and, therefore, do not sustain its contentions.

For the reasons herein stated the court adopts the findings of fact and conclusions of law of the referee in bankruptcy and affirms the order of the referee entered August 3, 1962. An order will be entered accordingly.