GORSUCH, Circuit Judge,
concurring.
I am pleased to join the court’s opinion. I agree with the court’s first holding — that under clear and long entrenched federal law a chiropractic business is no surreptitious sovereign entitled immunity from suit. I also agree with the court’s second holding — that Ms. Somerlott failed to preserve the arguments necessary to prevail on this score. I write separately to explain my reasons for reaching the first conclusion because both parties have exhibited considerable confusion about it.
Sometimes the solution to a problem comes clear by stating it. CND, LLC wants sovereign immunity. But CND, LLC is in the business of manipulating spines for profit. It serves mostly non-Indians and operates off reservation. It was formed under Oklahoma’s limited liability statutes. Those statutes define it as a “separate legal entity” from its shareholder (currently, the Cherokee Nation); one that can “sue, be sued, complain and defend in all courts”; and one whose assets can be sold to private persons at any time. See 18 Okla. Stat. § 2004(B)(1); id. § 2003(1) and (4). Given all this, it’s no wonder CND is unable to cite any authority that might immunize it from suit as some sort of secret sovereign.
Of course, Indian tribes are entitled to sovereign immunity absent congressional abrogation. See Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 759, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). And, of course, this immunity is not limited by the type of activity involved or where it takes place. Id. at 758, 118 S.Ct. 1700. But no matter how broadly conceived, sovereign immunity has never extended to a for-profit business owned by one sovereign but formed under the laws of a second sovereign when the laws of the incorporating second sovereign expressly allow the business to be sued. And it doesn’t matter whether the sovereign owning the business is the federal government, a foreign sovereign, state — or tribe.
Take the federal government. When the federal government chooses to act through a state-incorporated entity, courts hold those corporations to be just what they appear to be and subject to suit under the terms specified by state law. So if (as here) the state in question conditions the privilege of creating a corporate entity under its laws on an agreement the new entity will be amenable to suit, that condition must be respected even when the incorporator is the federal government. One sovereign, after all, cannot usually *1155 rewrite the laws of another. See Fed. Sugar Ref. Co. v. U.S. Sugar Equalization Bd., Inc., 268 F. 575, 584 (S.D.N.Y.1920) (“If the [federal] sovereign thus chooses as its agent a state corporation which can be sued it cannot by ipse dixit deprive one injured by such agent of the right to sue.”); see also Salas v. United States, 234 F. 842, 844-45 (2d Cir.1916) (“When the United States enters into commercial business” under the laws of New York, it “is to be treated like any other corporation”); Panama R.R. Co. v. Curran, 256 F. 768, 771-72 (5th Cir.1919).
The same principle holds with foreign sovereigns. At common law, a foreign government’s decision to incorporate a business under a state’s commercial laws didn’t afford that business immunity but subjected it to suit according to the terms prescribed by state law. “When a [foreign] government becomes a stockholder in a [state] corporation, it does not exercise its sovereignty as such. ‘It acts merely as a corporator, and exercises no other power in the management of the affairs of the corporation than are expressly given by the [state law] incorporating act.’ ” Amtorg Trading Corp. v. United States, 71 F.2d 524, 529 (C.C.P.A.1934) (quoting Bank ofKy. v. Wister, 27 U.S. (2 Pet.) 318, 324, 7 L.Ed. 437 (1829)); Restatement (Second) of Foreign Relations Law § 66(g) (1965); id. Reporters’ Notes 2(a). And this longstanding common law rule has now been deliberately codified in the Foreign Sovereign Immunities Act. See 28 U.S.C. § 1603; H.R.Rep. No. 94-1487 at 15 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6614 (citing Amtorg, 71 F.2d 524).
Even a state is generally held to the terms of its own corporate laws when it chooses to incorporate an entity. See, e.g., Bank of the U.S. v. Planters’ Bank of Ga., 22 U.S. (9 Wheat) 904, 907, 6 L.Ed. 244 (1824) (Marshall, C. J.); Bank of Commonwealth of Ky. v. Wister, 27 U.S. at 322. To be sure, a state may enact laws allowing the creation of governmentally-owned, special purpose “public” corporations — typically to perform chores comparable to those of a government agency, like running a port authority or a university. See, e.g., P.R. Ports Auth. v. Fed. Maritime Comm’n, 531 F.3d 868, 874-877 (D.C.Cir.2008) (noting that sovereign immunity extends only to those state-owned corporations both immune as a matter of state law and performing “typical” state functions). And to be sure these public corporations are sometimes treated as “arms of the state” and endowed with sovereign immunity. See, e.g., Regents of the Univ. of Calif. v. Doe, 519 U.S. 425, 429-30, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); see also P.R. Ports Auth., 531 F.3d at 882-83 (Williams, J., concurring) (questioning the wisdom of this development). But there is no suggestion that an arm-of-the-state “public corporation” like this is ever created under Oklahoma’s general incorporation statutes. See Wilson v. Omaha Indian Tribe, 442 U.S. 653, 667, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979) (applicability of a statute to the sovereign depends upon “context, the subject matter, legislative history, and executive interpretation.”). Let alone on behalf of another sovereign.
And this point leads to a related one. CND’s claim to immunity is not only inconsistent with longstanding rules governing sovereign immunity. It is also at odds with the reasons for those rules. The great innovation and advantage of the corporate form (and surely the cause of some problems, too) lies in the fact that it involves the creation, the embodiment, the bringing into being of a new entity with responsibilities and liabilities legally distinct from those of its incorporators and shareholders. See James D. Cox & Thomas Lee Hazen, Treatise on the Law of Corporations § 7.1 (2011) (“Recognition of a corporate personality is considered to be *1156 the most distinct attribute of the corporation.”). As a legally distinct entity created, embodied, brought into being by law of a sovereign, a corporation is, at the same time, generally defined by and subject to the privileges and responsibilities provided by that sovereign’s laws. A corporation isn’t a natural person endowed with inalienable rights, but an “artificial being” that may exercise only those privileges the law “confers upon it, either expressly, or as incidental to its very existence.” Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 636, 4 L.Ed. 629 (1819) (Marshall, C.J.); see also Sloan Shipyards Corp. v. Shipping Bd. Emergency Fleet Corp., 258 U.S. 549, 567, 42 S.Ct. 386, 66 L.Ed. 762 (1922) (“The meaning of incorporation is that you have a person, and as a person one that presumably is subject to the general rules of law”); Seymour Thompson, Commentaries on the Law of Private Corporations § 2101 (1912) (“Corporations, which are known as artificial persons, cannot rightfully do anything that is not expressly or by necessary implication permitted by the law of their being.”).
CND’s claim to immunity is inconsistent with this foundational feature of corporate law. It chose to incorporate under Oklahoma’s general limited liability company statute. And that statute expressly: (1) defines corporations created under its terms as “separate legal entities]” with rights and responsibilities separate and distinct from those of their shareholders; and (2) specifies that the rights and responsibilities of corporations created under its terms include the duty to answer lawsuits in any court. 18 Okla. Stat. §§ 2003, 2004. These traits thus came part and parcel with CND’s birth. They are part of its charter, entwined in its corporate DNA. And no one does (or could) suggest these statutorily defined characteristics infringe any privileges, constitutional or otherwise, necessarily incidental to a corporation’s creation. Cf. First Nat'l Bank of Bos. v. Bellotti, 435 U.S. 765, 784, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (noting that some constitutional protections come with corporate existence). Yet CND wishes to ignore them all the same, to disregard essential components of its charter, to overwrite its corporate DNA, to treat it as indistinct from its (ultimate and indirect) shareholder, and to deny others the ability to sue it. CND wants to exercise the privilege of incorporating, of coming into being, under Oklahoma law but without accepting the responsibilities attending that privilege.
Neither is that the end of it. While it wishes to disregard certain fundamental features of its Oklahoma corporate charter, no doubt CND wishes to retain and rely on others it finds useful. It seems highly likely, for example, that CND wants to retain the right given to it by state law to sell its assets or even ownership to private purchasers if and when it chooses to do so. See 18 Okla. Stat. § 2003. And absent immunity from suit, CND would surely insist courts respect (not ignore) its legal independence from its shareholders (whoever they may be at the time) and shield them from potential liability accordingly. In this way, then, CND asks us to codify an entirely new and different corporate law than Oklahoma has, one that picks and chooses the privileges CND finds advantageous without the responsibilities it finds nettlesome. Neither can CND explain how the attributes it wants to retain comport with its claim to sovereignty. After all, how might it really be part of a tribal sovereign but at the same time be freely tradable to private owners? And how can it claim to be identical to the tribe yet sufficiently distinct from the tribe that tribal assets may not be placed at risk? See Providence Eng’g Corp. v. Downey Shipbuilding Corp., 294 F. 641, 647-48 (2d Cir.1923) (“ ‘[i]f a corporation is formed by *1157 the state with transferable shares for the purpose of carrying on ... business in the same manner as a private corporation, it must be classed as a private corporation’ ” and subject to suit) (quoting Victor Morawetz, A Treatise on the Law of Private Corporations, § 3 (2d ed. 1886)); see also United, States v. Deutsches Kalisyndikat Gesellschaft, 31 F.2d 199, 202 (S.D.N.Y.1929).
The overlay of a second sovereign highlights and exacerbates these problems. When the Nation chose to create CND it chose to do so according to the terms another sovereign prescribed. And as a creature of Oklahoma law, CND has no authority to commandeer that State’s legislative processes and rewrite the statutory terms and conditions of its formation — any more than the State of Oklahoma may rewrite the laws of the Cherokee Nation. To allow CND the relief it seeks, to permit it to revise Oklahoma’s statutory code to suit its preferences, would, clearly viewed, represent an infringement on the rights of only one sovereign — Oklahoma. See Amtorg Trading Corp., 71 F.2d at 527; Fed. Sugar Refining Co., 268 F. at 584-7 (rejecting claim of sovereign immunity by the federal government for a corporation it owned but was created under Delaware law because “[njeither the [federal] Executive nor any person acting with authority under him had the power to change the Delaware [incorporation] statute, and hence no power to change the obligations, rights, or liabilities of a corporation which was the creature ... of the sovereign state of Delaware”).[1]
Not only is CND’s claim to immunity inconsistent with the principles of sovereign immunity and corporate law and the rationales undergirding them, it is inconsistent as well with the more particular reasons the Supreme Court has given for recognizing tribal sovereign immunity. Tribal sovereign immunity seeks “to promote the goal[s] of Indian self-government, ... tribal self-sufficiency, [and] economic development.” Okla. Tax Comm’n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 510, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (internal quotation marks omitted). And if respect for tribal self-determination and self-sufficiency means anything, it must mean respecting and giving effect to a tribe’s free choices. In this case, the Nation made a free choice to incorporate a business under Oklahoma’s law, and respect for its sovereignty and autonomy should lead us to give effect to that choice.
Neither can we doubt that the Nation lacked for choices when it came to organizing CND — or that good reasons exist for the choice it made. The Nation could have chosen to operate the chiropractic clinic itself and enjoy immunity for its operations. See Kiowa Tribe, 523 U.S. 751, 118 S.Ct. 1700. But this choice would have come at the cost of potentially limited growth because not all prospective business partners will agree to collaborate on *1158 such uneven terms. See Dixon v. Picopa Constr. Co., 160 Ariz. 251, 772 P.2d 1104, 1112 (1989) (observing that “[n]on-Indians will undoubtedly think long and hard before entering into business relationships with Indian corporations that are immune from suit”). Alternatively, the Nation could have chosen (as it did choose) to incorporate CND under state law, a choice that provided the Nation with lesser (though still significant) protection of tribal assets (the same protections any shareholder enjoys in a corporate setting), all while assuring potential business partners of the chance to do business on more even terms. That assurance carried with it the rationally attractive upside for the Nation of allowing CND a potentially greater range of business partners and creditors— and, with that, a greater chance for economic growth. See Atkinson v. Haldane, 569 P.2d 151, 174 (Alaska 1977); Frank Pommersheim & Terry Pechota, Tribal Immunity, Tribal Courts, and the Federal System: Emerging Contours and Frontiers, 31 S.D. L.Rev. 553, 559-60 (1986) (“For Indian tribes, sovereign immunity is a double-edged sword. It is a necessary and appropriate principle with which to protect and guard irreplaceable tribal resources ... [such as] land, timber, and minerals.... Nevertheless, a blind adherence to the concept of sovereign immunity would retard commercial and economic development.”); Thomas P. McLish, Tribal Sovereign Immunity: Searching for Sensible Limits, 88 Colum. L.Rev. 173, 190 (1988).
Finally, nothing in the “subordinate economic entity analysis” discussed in Breakthrough Management Group, 629 F.3d 1173 (10th Cir.2010), alters this analysis. That’s because the subordinate economic entity test exists only to determine whether particular tribal subdivisions are or aren’t “legal entities] separate and distinct from the TRIBE.” White Mountain Apache Indian Tribe v. Shelley, 107 Ariz. 4, 480 P.2d 654, 655 (1971) (capitalization in original). So, for example, BMG itself involved the question whether a tribe’s immunity extended to an unincorporated business owned by the tribe or to a tribal authority created under tribal law. And often the relationship between a tribe and various informal entities can be ambiguous. But this court has never applied the subordinate economic entity test to entities incorporated under the laws of a second sovereign. And for good reason. There’s no need to. We can easily tell whether an entity like that is legally “separate and distinct from the tribe” by looking to the laws of the second sovereign. That’s what we do when the federal government incorporates under state law. That’s what we do when a foreign sovereign incorporates under state law. And that’s what we do here. Looking to Oklahoma law, the answer is as apparent as it is unavoidable— telling us in clear terms that CND, LLC is indeed a “separate legal entity” from its tribal owner. 18 Okla. Stat. Ann. § 2004(B)(1).[2]

. To be sure, courts sometimes pierce the corporate veil and disregard the corporate form. But we do so to prevent the corporation’s owners from abusing the legal privilege of the corporate form when they seek to use that privilege to perpetrate a fraud or injustice. See First Nat’l City Bank v. Banco Para El Comercio, 462 U.S. 611, 621-22, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983). We do not pierce the veil to allow a corporation to escape the legal obligations it assumed when incorporating.
In fact, the parties can point us to only one recorded case in which a court has found that an entity incorporated under the law of a second sovereign was entitled to tribal immunity — Ransom v. St. Regis Mohawk Educ. & Comm. Fund, Inc., 86 N.Y.2d 553, 635 N.Y.S.2d 116, 658 N.E.2d 989 (1995). But the decision contains no reasoning that might persuade us to follow its solitary path in the *1158 face of a longstanding wall of contrary precedent.

. Beyond BMG, the remaining authority CND cites is no more persuasive. United States v. Logan, 641 F.2d 860 (10th Cir.1981), involved an exercise in statutory interpretation and said nothing about tribal immunity or the court's subject matter jurisdiction. Native American Distributing v. Seneca-Cayuga Tobacco Co. (NAD), 546 F.3d 1288 (10th Cir.2008), involved a business run by a tribe, not a state corporation, and so stands only for the (undisputed) proposition post-Kiowa that a tribe engaged in business activities is immune from suit, longstanding wall of contrary precedent.