GAWLIK v RENGACHARY

Docket No. 257754. Submitted February 14, 2006, at Detroit. Decided February 21, 2006, at 9:00 a.m.

Cynthia Gawlik brought a medical malpractice action in the Wayne Circuit Court against Setti Rengachary; University Neurosurgical Associates, P.C. (UNA); and others. Only Rengachary and UNA remained as defendants by the date scheduled for trial. On that day, the plaintiff moved to strike the defendants' affidavit of meritorious defense, and the defendants moved to strike the plaintiff's notice of intent to sue and her affidavit of merit. The court, Michael J. Callahan, J., denied the defendants' motion, granted the plaintiff's motion, and entered a default in the plaintiff's favor. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. The trial court abused its discretion when it granted the plaintiff's motion for a default on the basis of an affidavit of meritorious defense that was timely filed, but deficient because of its cursory nature. Default was not an appropriate sanction because the plaintiff suffered no prejudice and forfeited the issue by failing to raise it before trial. The trial court also abused its discretion by employing default as a sanction without determining on the record whether less drastic alternative sanctions were appropriate.

2. The trial court erred by denying the defendants' motion to strike the plaintiff's notice of intent. Although the plaintiff's notice named several physicians, hospitals, and professional corporations as defendants, it contained only a short description of a standard of care encompassing all the caretakers rather than the particularized averments required by *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679 (2004). It failed to describe a standard of care or theory of liability pertaining to UNA. The portion of the notice explaining how the defendants could have conformed their actions to the standard of care merely referred the defendants back to that part of the notice containing the standard of care, a practice condemned in *Roberts*.

Reversed and remanded for further proceedings.

NEGLIGENCE — MEDICAL MALPRACTICE — AFFIDAVITS OF MERITORIOUS DEFENSE — DEFAULTS.

A trial court abuses its discretion by entering a default as a sanction against a medical malpractice defendant who files a timely, but deficient, affidavit of meritorious defense if the court does not determine on the record whether less drastic alternative sanctions are appropriate and fails to determine that the plaintiff suffered prejudice because of the deficient affidavit; a plaintiff who fails to raise before trial the issue of a timely filed, but deficient, affidavit of meritorious defense forfeits that issue.

*Fieger, Fieger, Kenney & Johnson, P.C.* (by *Geoffrey Nels Fieger, William J. McHenry,* and *Tammy J. Reiss*), for the plaintiff.

*Tanoury, Corbet, Shaw, Nauts & Essad, P.L.L.C.* (by *Linda M. Garbarino* and *Debbie K. Taylor*), for the defendants.

Before: O'CONNELL, P.J., and SMOLENSKI and TALBOT, JJ.

PER CURIAM. Defendants appeal by leave granted the trial court's order granting plaintiff's motion to strike defendants' affidavit of meritorious defense and entering a default against them. Defendants also challenge the court's denial of their motion to strike plaintiff's notice of intent and affidavit of merit. We reverse both orders.

Defendant University Neurosurgical Associates, P.C. (UNA), employed defendant Setti Rengachary, a neurosurgeon. Plaintiff visited Rengachary complaining of pain in her neck and along her right side. Plaintiff had undergone fusion surgery in her neck before, and Rengachary suggested an operation with a posterior approach that would remove excess bone and disk tissue on the left side of her cervical vertebrae. Plaintiff consented and was admitted to the hospital on Novem-

ber 30, 1999. However, before the surgery, Rengachary learned that plaintiff complained of bilateral pain, which he determined would not be cured by the mere removal of tissue on the left side, but mandated fusion of the vertebrae above and below the previous fusion. This required an anterior approach. Rengachary met with plaintiff in the preoperation area and gave her a consent form explaining some aspects of the procedure, such as the approach and the use of cadaver bone grafts. Plaintiff signed the consent form. During the operation, Rengachary perforated plaintiff's esophagus, and complications arose, including intubation and subsequent infection. According to her notice of intent to sue, plaintiff was not released from the hospital until January 14, 2000, and was readmitted a few days later for another week-long hospital stay.

Plaintiff sent her notice of intent to sue on November 16, 2001. In relevant part, the notice states:

1. FACTUAL BASIS FOR CLAIM

On or about November 30, 1999, Plaintiff Cynthia Gawlik . . . was admitted to the Detroit Medical Center, Harper Hospital, under the care of Paul Ragatzki, M.D. On December 1, 1999, she underwent emergent anterior cervical dysectomy and fusion (ACDF) by Dr. Setti Rengachary resulting in a series of complications which are the subject of this NOI, including esophageal perforation (which was not repaired in a timely fashion) resulting in abscess, osteomyelitis and mediastinitis and aspiration pneumonia. The medical records from the DMC, Harper Hospital, and especially Dr. Rengachary, are intentionally incomplete and false regarding the date and time of the ACDF by Dr. Rengachary, and the subsequent hospital course of the patient.

The patient acquired staphylococcus aureus, osteomyelitis with mediastinitis, respiratory distress (not treated timely) and acute adult respiratory distress syndrome (ARDS) and aspiration pneumonia, tracheostomy, vocal

cord damage, and brain damage secondary to prolonged respiratory distress, which was not diagnosed in a timely fashion by the hospital team caring for the patient.

* * *

2. APPLICABLE STANDARD OF PRACTICED [sic] OR CARE ALLEGED

The applicable standard of care required is that of reasonably prudent physicians and surgeons and medical care providers in the same or similar circumstances as those who were conducting surgical procedures, and caring for the patient, Cynthia Gawlik, from the time of her admission on November 30, 1999, and subsequent surgeries, including the ACDF by Dr. Rengachary from neurosurgery on December 1, 1999, and post operative care through discharge on January 12, 2000.

Pursuant to MCL 332.21513 entitled "Duties and Responsibilities of Owner, Operator or Governing Body of the Hospital," the owner, operator and governing body of a hospital licensed under this Article (A) are responsible for all phases of the operation of the Hospital, selection of the medical staff, and quality of care rendered in the Hospital. Defendant DMC and Harper Hospital had this statutory duty in addition to its responsibly to act reasonably under the circumstances which existed in this case.

3. THE MANNER IN WHICH IT IS CLAIMED THAT THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED

The applicable standard of practice and care was breached when the above named health care providers, physicians, and surgeons failed to act reasonably under the circumstances which existed at the time the patient was admitted to Defendant Harper Hospital on November 30, 1999 and thereafter. Defendants were required to perform the ACDF by Dr. Rengachary on 12/1/1999 in a reasonable manner and in accordance with consent from the patient after she had been properly apprised of the risks and benefits of the proposed surgery. Dr. Rengachary and the

physicians and residents responsible for this surgery acted unreasonably, including Dr. Julia Pilitsis, when they changed the surgical plan on the patient to anterior cervical dysectomy and fusion of C4-5 and C6-7 which greatly increased the risk to the patient of complications, and then, conducted the surgery and approach in a negligent manner. Plaintiff never understood and never consented to the changed surgical plan. Further, the patient never agreed to any use of cadaver donations for the cervical surgeries and would have refused same if she had known of the risks and proposed changes.

The 12/1/99 surgery was conducted in a negligent fashion, and resulted in the above described complications. These complications, including esophaeal [sic] perforation, were not diagnosed or treated in a timely fashion by Defendant Surgeon, by the attending physician, by the residents, or the team responsible for the patient's care and treatment. Post-Operatively, as a result of the negligence of Defendant Physicians and Surgeons, the patient developed abscesses, osteomyelitis and mediastinitis and the other complications which would have been completely avoided but for the radical surgery performed on 12/1/99 without the consent of the patient, and but for the esophaeal perforation, and failure of the Defendants to timely diagnose and repair the esophaeal perforation, before additional complications occurred.

Post-Operatively, these complications were allowed to worsen, requiring I & D on 12/23/99. She remained hospitalized until January 12, 2000. Plaintiff complains that the entire admission of 11/30/99 through January 12, 2000 was the result of a series of complications and botched procedures which were caused [by] Defendants [sic] negligence and failure to act reasonably from the time of the surgery on 12/1/99 and thereafter.

4. THE ACTION THAT SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD OF PRACTICE OR CARE

In order to comply with the standard of practice, the above named physicians and health care providers and hospitals needed to [sic, to do] the things listed in Section #2 above.

Although the notice names several physicians, hospitals, and professional corporations, plaintiff's notice generally described the standard of care as "that of reasonably prudent physicians and surgeons and medical care providers in the same or similar circumstances as those who were conducting surgical procedures, and caring for the patient . . . ." The notice did not contain a standard of care particularly tailored to Rengachary and did not contain any standard of care for UNA. Moreover, the compliance portion of the notice merely referred defendants to an earlier section, which lacked any information on how defendants could have complied with the standard of care.

Nevertheless, plaintiff filed suit on May 23, 2002, relying on an affidavit of merit signed by Dr. Karl Manders. Defendants responded in a timely fashion with an affidavit of meritorious defense signed by Rengachary. Defendants' affidavit was extremely conclusory, and in it Rengachary merely opined that plaintiff received diagnosis and treatment according with the standard of care, which only required "evaluation of the patient's medical condition and assessment of reasonable courses of treatment." Their answers, however, clearly challenged the sufficiency of plaintiff's notice of intent and affidavit of merit. They also clearly raised the affirmative defense that plaintiff failed to comply with the statute of limitations. The case proceeded without further incident, except that the list of defendants dwindled until only Rengachary and UNA remained in the suit.

During discovery, plaintiff's expert revealed that he would not disparage Rengachary's decision to change

the approach from a posterior to an anterior approach or from a foraminotomy on the left side to a fusion and plating procedure. The expert also agreed that the esophageal perforation could have occurred without negligence on Rengachary's part. In fact, the expert's only point of genuine contention was how Rengachary obtained plaintiff's signature on the surgical consent form. The expert opined that Rengachary should have cancelled or postponed the surgery indefinitely rather than obtaining consent for a new operation from a distressed patient. Defendants limited plaintiff's complaint to the issue of informed consent by successfully moving to strike the unsupported allegations regarding negligence in the selection and performance of the actual surgery.

According to the final pretrial order, plaintiff asserted that she would argue the primary issue of lack of consent, but did not raise any issue regarding defendants' affidavit of meritorious defense. Nevertheless, on the day scheduled for trial, and only a few weeks after our Supreme Court issued its opinion in *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679; 684 NW2d 711 (2004), plaintiff and defendants filed motions to strike; plaintiff sought to strike defendants' affidavit of meritorious defense, and defendants sought to strike plaintiff's notice of intent and affidavit of merit. The trial court heard the motions the following day and held that plaintiff's notice and affidavit sufficiently complied with the requirements in *Roberts*, but defendants' affidavit did not. The trial court denied defendants' motion, granted plaintiff's motion, and entered a default in plaintiff's favor. Defendants applied for leave to appeal, which this Court granted.

Defendants argue that the trial court abused its discretion when it granted plaintiff's motion for a

default on the basis of a timely filed, but defective, affidavit of meritorious defense. Under the particular facts of this case, we agree. The trial court applied case law designed to enforce statutes of limitations and a defendant's basic compliance with filing requirements. *Roberts, supra* at 686; *Kowalski v Fiutowski*, 247 Mich App 156, 165-166; 635 NW2d 502 (2001). Here, defendants' pleadings were not tardy or totally absent, but merely deficient, cf. *Kowalski, supra* at 161, and defendants were not racing the statute of limitations. See *id.*; see also *Saffian v Simmons*, 267 Mich App 297, 304; 704 NW2d 722 (2005) (explaining that the requirement in *Scarsella v Pollak*, 461 Mich 547, 549; 607 NW2d 711 [2000], regarding the mandatory inclusion of an affidavit of merit with a complaint applied only to cases in which the statute of limitations was an issue).

Nevertheless, the trial court did not discuss the prejudice to plaintiff or the appropriateness of any other remedial sanctions on the record, but improperly defaulted defendants without explanation. See *Kowalski, supra* at 166. This Court has previously rejected the argument that default is an appropriate sanction for failing to file an affidavit of meritorious defense when a plaintiff, as here, suffers no prejudice and fails to raise the issue before trial. *Wilhelm v Mustafa*, 243 Mich App 478, 485; 624 NW2d 435 (2000). We have also rejected dismissal of a plaintiff's suit merely for the failure to comply perfectly with the affidavit of merit statute. *VandenBerg v VandenBerg*, 231 Mich App 497, 502-503; 586 NW2d 570 (1998). Additionally, the sanction of dismissal with prejudice, comparable to the default in this case, is only appropriate when a flaw in the affidavit is accompanied by a statute of limitations problem. *Scarsella, supra*. Nevertheless, the trial court failed to recognize any of these legal distinctions and entered the default as a matter of course. An error of

law may lead a trial court to abuse its discretion, see *Craig v Oakwood Hosp*, 471 Mich 67, 82; 684 NW2d 296 (2004), and a trial court abuses its discretion by employing default as a sanction without determining, on the record, whether less drastic alternative sanctions are appropriate, *Kowalski, supra* at 166; *Houston v Southwest Detroit Hosp*, 166 Mich App 623, 631; 420 NW2d 835 (1987). Because the trial court abused its discretion, we reverse the trial court's order entering the default.

Default was an inappropriate sanction in this case. See *Wilhelm, supra* at 483-486. Even assuming that default is ordinarily an available remedy for a technically deficient, but timely filed, affidavit of meritorious defense, plaintiff forfeited the issue by not raising it for the final pretrial order. See *id.* at 485. By that time, Rengachary, plaintiff's expert, and other medical personnel had been fully deposed, providing the entire factual backdrop for the claims and defenses relevant to trial. Defendants correctly argue that, during his deposition, Rengachary explained how his actions conformed to the standard of care. Moreover, he was available to clear up any ambiguities in his affidavit of meritorious defense. Nevertheless, plaintiff avoided the issue and waited until the day of trial to bring her motion to strike. Although this caused defendants to incur the expense of extensive trial preparation, plaintiff failed to present any evidence that a deficiency in the affidavit of meritorious defense prejudiced her ability to prepare for trial or led to any other form of prejudice. See *id.*

Plaintiff mistakenly relies on a series of cases in which a plaintiff's failure to provide a proper affidavit of merit or notice of intent led to dismissal. However, in each of those cases, the plaintiff ran into problems with

the statute of limitations. As we pointed out in *Kowal-ski, supra* at 165, plaintiffs and defendants are different for the simple reason that defendants are never racing against time to comply with a statute of limitations. Moreover, in *VandenBerg, supra* at 502-503, we held that, absent statute of limitations problems or other serious prejudice, dismissal of a plaintiff's complaint was not a permissible remedy for failing to provide an affidavit of merit with the complaint. See also *Saffian, supra* at 304. In other words, we have consistently distinguished between cases involving a statute of limitations bar and those simply involving defective pleadings. Even in the total absence of an affidavit of merit, a plaintiff is not barred from filing a new complaint unless a statute of limitations problem arises. *Scarsella, supra* at 551-552. The trial court failed to appreciate this legal distinction and granted plaintiff's motion for a default as a matter of course, effectively barring defendants' legitimate defenses. The trial court failed to determine what prejudice, if any, plaintiff suffered because of the cursory statements in defendants' affidavit and also failed to consider, on the record, any lesser alternative remedial sanctions. As stated, this was not a proper exercise of its discretion.

We next consider defendants' challenge to plaintiff's notice of intent.[1] In *Roberts*, our Supreme Court held that a claimant's notice of intent must "make good-faith averments that provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings." *Roberts, supra* at 701. As in *Roberts, supra* at 692-693, plaintiff's notice of intent contains a one-sentence standard of care that generally

---

[1] We do not consider defendants' challenge to plaintiff's affidavit of merit because our decision on plaintiff's notice of intent is dispositive.

encompasses all caretakers. Moreover, the notice does not contain any standard of care for UNA and fails to explain any theory of liability that pertains to it. See *id.* at 693. The portion of the notice designated for explaining how defendants could have conformed to the standard of care merely refers defendants back to the portion containing the standard of care. This practice was expressly condemned in *Roberts*. *Id.* at 698. Although the notice's third paragraph provides more detail about what plaintiff thought Rengachary did wrong, it still failed to explain what he should have done, a defect that came to light when plaintiff's expert stopped short of deeming Rengachary's selection and performance of the surgery as negligent acts. Because plaintiff's notice of intent failed to meet the standards set forth in *Roberts*, the trial court erred by denying defendants' motion to strike it, and we reverse that order. However, defendants never moved to dismiss on the basis of the statute of limitations, so we remand to the trial court for further proceedings.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.