DONKERS v KOVACH

Docket No. 270311. Submitted October 2, 2007, at Lansing. Decided December 18, 2007, at 9:00 a.m. Leave to appeal sought.

Catherine N. Donkers and Brad L. Barnhill brought an action alleging legal malpractice, among other things, against their former attorney, Timothy Kovach. The court, Melinda Morris, J., dismissed the lawsuit with prejudice when Donkers refused, for religious reasons, to raise her right hand as part of her affirmation to testify truthfully at her deposition and at a motion hearing. The plaintiffs appealed.

The Court of Appeals *held*:

Neither MCL 600.1434, the more specific of the two statutory provisions that govern the administration of oaths and affirmations, nor MRE 603, the analogous rule of evidence, mandates special words or actions before a witness may testify; rather, each requires only a simple affirmation or promise to tell the truth. Therefore, the court erred as a matter of law in concluding that Donkers was required to raise her right hand before testifying, and it abused its discretion by dismissing the case.

MARKEY, J., dissenting, stated that the plain text of MCL 600.1432 and MCL 600.1434, read in harmony because they are *in pari materia*, requires a witness to raise his or her right hand to swear or affirm to tell the truth before testifying in light of the fact that the words "oath" and "affirmation" each must be construed to include the other, that the hand-raising provision does not violate the Michigan Constitution or the United States Constitution, and that the trial court did not abuse its discretion or commit plain error warranting reversal by dismissing the case on the basis of Donkers' refusal to raise her right hand when affirming to tell the truth.

Reversed and remanded for further proceedings.

WITNESSES — OATH OR AFFIRMATION — HAND-RAISING REQUIREMENT.

A person who chooses to affirm, rather than swear, to testify truthfully is not required to raise his or her right hand while making the affirmation (MCL 600.1432[1], 600.1434; MRE 603).

Catherine N. Donkers and Brad L. Barnhill *in propriis personis.*

Before: JANSEN, P.J., and FITZGERALD and MARKEY, JJ.

JANSEN, P.J. Plaintiffs Catherine N. Donkers and Brad L. Barnhill appeal by right the trial court's dismissal of their lawsuit. We reverse and remand for reinstatement of plaintiffs' claims.

I

Plaintiffs sued defendant Timothy Kovach, their former attorney, for alleged legal malpractice in his handling of a previous civil matter.[1] During the course of discovery in the present case, defendant sought to depose plaintiff Donkers. At the time of the deposition, Donkers refused to raise her right hand and to be sworn under oath. She claimed that raising her right hand would violate her religious beliefs. At a subsequent motion hearing before the trial court, Donkers again refused to raise her right hand and to be sworn under oath. She indicated that she would affirm to tell the truth, but stated that she was still unwilling to raise her right hand for religious reasons. When Donkers refused to raise her hand as part of her affirmation to testify truthfully, the trial court dismissed plaintiffs' case with prejudice:

> *The Court*: Are you going to raise your right [hand] or not?
>
> *Donkers*: No ma'am. It's writ—
>
> *The Court*: Okay if not then I dismiss your case and you may take it up on appeal.

[1] In addition to legal malpractice, plaintiffs' complaint set forth several other claims.

*Donkers*: Ma'am—

*The Court*: Your case is dismissed.

*Kovach*: Thank you, Your Honor.

*Donkers:* Ma'am I haven't [been] given an opportunity. The same thing . . . happened at the deposition.

*The Court*: That's right, your case is dismissed.

*Donkers*: I didn't have an opportunity to state what my substitute oath would be.

*The Court*: If you'll—if you'll submit an order—

*Kovach*: Your honor, could I have seven days to submit this order?

*The Court*: You may.

*Kovach*: Thank you very much, Judge Morris.

*Donkers*: Ma'am, I'm going to object. I haven't been given an opportunity to say what my sub—

*The Court*: You know what you do when you object, you appeal. You appeal to the Court of Appeals and explain to them why it is you will not affirm that you will tell the truth on a deposition. There is nothing religious about that. There is no basis for any religious objection. The case is dismissed.

*Donkers*: I had offered to tell the truth . . . this [is] exactly what I offered to say at the deposition as a substitute for an oath. I've had no problem in any other court in Michigan. I've had no problem in Nevada.

*The Court*: The record is turned off, so you're talking to the wind here.

II

A trial court's decision to dismiss an action is reviewed for an abuse of discretion. *Vicencio v Jaime Ramirez, MD, PC,* 211 Mich App 501, 506; 536 NW2d 280 (1995). "An error of law may lead a trial court to abuse its discretion . . . ." *Gawlik v Rengachary,* 270

Mich App 1, 8-9; 714 NW2d 386 (2006). We review de novo questions concerning the proper interpretation and application of statutes, court rules, and rules of evidence. *Eggelston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003); *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002); *Peters v Gunnell, Inc*, 253 Mich App 211, 225; 655 NW2d 582 (2002).

III

Plaintiffs argue that the trial court erred in concluding that Donkers was required to raise her right hand in order to affirm that she would testify truthfully at her deposition and in open court. Therefore, plaintiffs assert that the trial court abused its discretion by dismissing their case. We agree with plaintiffs, and conclude that the act of raising one's right hand is not required when affirming to testify truthfully.

"Dismissal is the harshest sanction that the court may impose on a plaintiff." *Schell v Baker Furniture Co*, 232 Mich App 470, 475; 591 NW2d 349 (1998). As a result, a trial judge must follow the procedures set forth in our court rules before ordering an involuntary dismissal. See *id*. at 478-479; see also *Henry v Prusak*, 229 Mich App 162, 168; 582 NW2d 193 (1998). We acknowledge that a trial court is authorized to consider "dismissing the action or proceeding" as a sanction when a party refuses to testify at a deposition. See MCR 2.313(B)(1); MCR 2.313(B)(2)(c). However, in the instant case, Donkers did not refuse to testify. Instead, she merely refused to raise her right hand.

Chapter 14 of the Revised Judicature Act mandates that witnesses in judicial proceedings swear or affirm that their testimony will be true. MCL 600.1432; MCL 600.1434; *People v Knox*, 115 Mich App 508, 511; 321

NW2d 713 (1982). MCL 600.1432(1) provides for the manner of administering oaths:

> The usual mode of administering oaths now practiced in this state, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except as otherwise provided by law. The oath shall commence, "You do solemnly swear or affirm".

Among the exceptions to this general rule, MCL 600.1434 provides that "[e]very person conscientiously opposed to taking an oath may, instead of swearing, solemnly and sincerely affirm, under the pains and penalties of perjury." It is therefore "otherwise provided by law" that in lieu of swearing an oath under MCL 600.1432, a person may "solemnly and sincerely affirm" to testify truthfully. MCL 600.1434; *People v Ramos*, 430 Mich 544, 549 n 8; 424 NW2d 509 (1988) (describing MCL 600.1434 as one of the statutory exceptions to the general rule of MCL 600.1432). What is less clear is whether a witness who elects to affirm to testify truthfully must also raise his or her right hand when doing so.

Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). "To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language." *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). The words contained in the statute provide us with the most reliable evidence of the Legislature's intent. *Shinholster, supra* at 549.

MCL 600.1432 and MCL 600.1434 relate to the same subject matter and share a common purpose. Accordingly, they are *in pari materia*, and must be read

together as one law. *Apsey v Mem Hosp*, 477 Mich 120, 129 n 4; 730 NW2d 695 (2007); *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998). When two statutes are *in pari materia* but conflict with one another on a particular issue, the more specific statute must control over the more general statute. *People v Buehler*, 477 Mich 18, 26; 727 NW2d 127 (2007). Accordingly, MCL 600.1434, which provides a specific exception to the general rule of MCL 600.1432, must control if any conflict exists between the two statutes. *Buehler, supra* at 26.

Despite the fact that MCL 600.1434 provides a specific exception to the general rule requiring oaths, it does not provide for the manner of administering affirmations. Of central importance in this case, MCL 600.1434 does not address whether the upraised right hand—apparently necessary to effectuate an oath under MCL 600.1432—is required when making an affirmation pursuant to MCL 600.1434. The omission of a provision in one statute that is included in another statute should be construed as intentional, and provisions not included by the Legislature may not be included by the courts. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993); *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 103; 693 NW2d 170 (2005). Indeed, "[c]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington, supra* at 210. The Legislature included the requirement of an upraised right hand in the general rule of MCL 600.1432, but omitted any such requirement from the specific exception of MCL 600.1434. Looking to the more specific statute as we must, *Buehler, supra* at 26, and construing the omission of the upraised-hand requirement from MCL 600.1434

as intentional, *Farrington, supra* at 210, we conclude that the act of raising one's right hand is not required to effectuate a valid affirmation under MCL 600.1434. Because Donkers chose to affirm to tell the truth rather than to swear an oath, she was not required to raise her right hand when doing so.[2]

Our conclusion in this regard is further supported by MRE 603, which provides:

> Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.

As the federal courts have observed in interpreting the identical language of FRE 603, no particular form or language is necessary when swearing or affirming to testify truthfully. *Gordon v Idaho*, 778 F2d 1397, 1400 (CA 9, 1985); see also *United States v Looper*, 419 F2d 1405, 1407 n 3 (CA 4, 1969).[3] Indeed, the *Gordon* court

---

[2] It is true that "[t]he word 'oath' shall be construed to include the word 'affirmation' in all cases where by law an affirmation may be substituted for an oath; and in like cases the word 'sworn' shall be construed to include the word 'affirmed'." MCL 8.3k. However, the rule of construction contained in MCL 8.3k may not be applied if it "would be inconsistent with the manifest intent of the legislature." MCL 8.3. The Legislature clearly intended in Chapter 14 of the Revised Judicature Act to set up a distinction between oaths and affirmations and to treat the two as separate and distinct acts. See MCL 600.1434. Therefore, for the purpose of interpreting MCL 600.1432 and MCL 600.1434, it would be contrary to the intent of the Legislature to view the words "oath" and "affirmation" as interchangeable and synonymous. Pursuant to MCL 8.3, the rule of construction contained in MCL 8.3k does not affect our interpretation of MCL 600.1432 and MCL 600.1434.

[3] We are fully aware that decisions of lower federal courts are not binding on Michigan state courts. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004). Nonetheless, such decisions may be persuasive. *Cowles v Bank West*, 476 Mich 1, 33-34; 719 NW2d 94 (2006). Federal caselaw is particularly persuasive in this instance because the

specifically held that pursuant to FR Civ P 30(c) and FR Civ P 43(d), which parallel the general rule of FRE 603 in the context of discovery and trials, witnesses "need not raise their hand" when swearing or affirming to testify truthfully. *Gordon, supra* at 1400-1401. We similarly conclude that it is not necessary for a witness to raise his or her right hand or to engage in any special formalities when swearing or affirming to testify truthfully pursuant to MRE 603. As the plain language of MRE 603 makes clear, no particular ceremonies, observances, or formalities are required of a testifying witness so long as the oath or affirmation "awaken[s]" the witness's conscience and "impress[es]" his or her mind with the duty to testify truthfully.

The authority to promulgate rules governing practice and procedure in Michigan courts rests exclusively with our Supreme Court. Const 1963, art 6, § 5; *McDougall v Schanz*, 461 Mich 15, 26; 597 NW2d 148 (1999). Therefore, when resolving a conflict between a statute and a court rule, the court rule prevails if it governs purely procedural matters. *Staff v Johnson*, 242 Mich App 521, 530-531; 619 NW2d 57 (2000); *People v Strong*, 213 Mich App 107, 112; 539 NW2d 736 (1995). This tenet applies equally to a conflict between a statute and a rule of evidence. See *McDougall, supra* at 24. Therefore, to the extent that any conflict may exist between MRE 603 and the statutes at issue in this case, MRE 603 must control because MCL 600.1432 and MCL 600.1434 govern purely procedural matters. *Staff, supra* at 530-531; *Strong, supra* at 112.

Having determined that a witness need not raise his or her right hand when affirming to testify truthfully pursuant to MCL 600.1434, we need not decide whether

language of FRE 603 is identical to that of MRE 603. See *People v VanderVliet*, 444 Mich 52, 60 n 7; 508 NW2d 114 (1993).

there is in fact a conflict between MRE 603 and the particular statutes in question. Regardless of whether the calculus is controlled by MCL 600.1434 or by MRE 603, Donkers was simply not required to raise her right hand before testifying in this case.

IV

Neither MCL 600.1434 nor MRE 603 mandates special words or actions before a witness may testify; each requires only a simple affirmation or promise to tell the truth. Thus, as long as Donkers' promise to testify truthfully was minimally sufficient, the trial court was required to allow her testimony. The trial court erred as a matter of law by concluding that Donkers was required to raise her right hand, and this error led the court to abuse its discretion by dismissing plaintiffs' action. See *Gawlik, supra* at 8-9.

In light of our resolution of the issues, we need not consider the remaining arguments raised by plaintiffs on appeal.

Reversed and remanded for reinstatement of plaintiffs' claims. We do not retain jurisdiction.

FITZGERALD, J., concurred.

MARKEY, J. (*dissenting*). I respectfully dissent because the plain text of MCL 600.1432 and MCL 600.1434, read in harmony, requires a witness to raise his or her right hand to swear or affirm to tell the truth before testifying. I also find no constitutional impediment to applying the plain statutory language as written. Thus, the trial court did not commit a legal error in requiring plaintiff Donkers to raise her right hand to affirm to tell the truth on deposition. Finally, considering all the circumstances of this case, I conclude that the trial

court did not abuse its discretion or commit plain error warranting reversal by dismissing this case on Donkers' refusal to do so. Consequently, I would affirm.

The pertinent statutes provide:

> The usual mode of administering oaths now practiced in this state, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except as otherwise provided by law. The oath shall commence, "You do solemnly swear or affirm". [MCL 600.1432(1).]

> Every person conscientiously opposed to taking an oath may, instead of swearing, solemnly and sincerely affirm, under the pains and penalties of perjury. [MCL 600.1434.]

> The word "oath" shall be construed to include the word "affirmation" in all cases where by law an affirmation may be substituted for an oath; and in like cases the word "sworn" shall be construed to include the word "affirmed". [MCL 8.3k.]

This Court reviews de novo questions of constitutional and statutory construction. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 174; 730 NW2d 722 (2007). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). When interpreting a statute, the Court must first examine the language of the statute itself. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). If unambiguous, a statute must be enforced as written. *Fluor, supra*. A statutory provision is ambiguous only if it irreconcilably conflicts with another provision or when it is equally susceptible to more than a single meaning. *Fluor, supra* at 177 n 3. Further, "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." *Lansing Mayor v Pub Service*

*Comm*, 470 Mich 154, 165; 680 NW2d 840 (2004) (citation and internal punctuation omitted).

Two other special rules of construction apply to the statutes at issue here. First, as the majority concedes, the statutes are *in pari materia*, meaning they relate to the same subject or share a common purpose and, therefore, must be read together as one law. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). So, even if an ambiguity exists permitting judicial construction beyond the plain text, a construction that avoids conflict controls. *Id*. Second, unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, considering the context in which the words are used. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236-237; 596 NW2d 119 (1999). But when the Legislature specifically defines a term, the statutory definition alone controls the meaning of that term. *Haynes, supra* at 35.

MCL 600.1432(1) plainly mandates that the "usual mode of administering oaths now practiced in this state, by the person who swears holding up the right hand, *shall be observed in all cases* in which an oath may be administered by law except as otherwise provided by law." (Emphasis added.) In *People v Ramos*, 430 Mich 544; 424 NW2d 509 (1988), our Supreme Court emphasized that the "usual mode" applied *"in all cases," id*. at 548-549, 553 (emphasis in original) and that the upraised right hand was an integral and required formality for a valid oath that is subject to the pains of perjury, *id*. at 548-553. The Court explained the importance of the outward physical nature of the statutory requirements:

> Oaths take the form of *a significant and readily observable act or acts* that serve to impress upon the oath taker the importance of providing accurate information, and

operate as *objective evidence* that the oath taker under-
stands the importance of providing accurate information
and is promising, under threat of severe penalties for lying,
to be truthful. [*Id.* at 548 (emphasis added).]

Further, the plain text of MCL 600.1432(1) manifests
that the "usual mode" applies in *all cases* whether one
swears an oath or affirms to tell the truth by providing
that it "shall be observed in all cases in which an oath
*may be administered* by law except as otherwise pro-
vided by law." (Emphasis added.) Because an oath by
swearing *may* be administered *in all cases*, "the usual
mode of administering oaths . . . by the person who
swears holding up the right hand" applies *in all cases*,
whether or not an oath *is actually administered*. This
reading is further buttressed by the text of the second
sentence of MCL 600.1432(1), which provides preamble
language to use for either swearing an oath or affirming
to tell the truth: "You do solemnly swear or affirm."

Moreover, MCL 8.3k mandates how the words "oath"
and "sworn" "shall be construed." I disagree with the
majority that the plain text of MCL 8.3k may be ignored
on the basis of the majority's determination of the
"manifest intent of the legislature," MCL 8.3, which the
majority in turn bases on the lack of text in MCL
600.1434. Rather, the definitions the Legislature has
provided in MCL 8.3k must be applied to MCL
600.1432. *Haynes, supra* at 35. Specifically, MCL 8.3k
requires that "in all cases where by law an affirmation
may be substituted for an oath," the "word 'oath' shall
be construed to include the word 'affirmation'" and
"the word 'sworn' shall be construed to include the
word 'affirmed.'" When the rule of construction re-
quired by MCL 8.3k is applied to the first sentence of
MCL 600.1432(1) in a case where a person conscien-
tiously opposes taking an oath, as permitted by MCL
1434, it would read (with tenses altered to fit the

context): "The usual mode of administering [affirmations] now practiced in this state, by the person who [affirms] holding up the right hand, shall be observed in all cases in which an [affirmation] may be administered by law except as otherwise provided by law."

I also disagree with the majority that MCL 600.1434 may be read independently from MCL 600.1432. Because these two provisions are *in pari materia*, they must be read together in harmony as one law. *Webb*, *supra* at 274. The plain text of MCL 600.1432(1) requires that it applies "except as otherwise provided by law." Thus, unless an exception to the hand-raising requirement of the "usual mode" stated in § 1432(1) is found elsewhere, it applies to both swearing an oath and affirming to tell the truth. Clearly, § 1434 provides an exception to *swearing* an oath. "Every person conscientiously opposed to taking an oath may, *instead of swearing*, solemnly and sincerely affirm, under the pains and penalties of perjury." MCL 600.1434 (emphasis added). But § 1434 contains no exception to the "usual mode" stated in § 1432(1) of raising one's right hand when affirming to tell the truth. Indeed, citing *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993), and *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 103; 693 NW2d 170 (2005), the majority correctly notes that "[t]he omission of a provision in one statute that is included in another statute should be construed as intentional, and provisions not included by the Legislature may not be included by the courts." *Ante* at 371. But the majority nevertheless reads into § 1434 language the Legislature did not adopt. The Legislature could have written, but did not write, § 1434 to provide: "Every person conscientiously opposed to taking an oath may, instead of swearing *while holding up the right hand*, solemnly and sincerely affirm, under the pains and penalties of per-

jury." I agree that this Court must assume that the Legislature intentionally omitted from § 1434 language that would exclude from the usual mode of affirming to tell the truth the hand-raising requirement of § 1432(1). Thus, the absence of language in § 1434 is no basis for ignoring the plain hand-raising requirement of § 1432(1).

In addition, I disagree with the majority that a conflict exists between MCL 600.1434 and MCL 600.1432 that would permit judicial construction beyond the text of the statutes, thus permitting the exception to swearing in § 1434 to control the general rule stated in § 1432. There is no conflict at all between § 1432 and § 1434. Indeed, MCL 8.3k mandates how the words "oath" and "sworn" "shall be construed." Specifically, MCL 8.3k requires that "in all cases where by law an affirmation may be substituted for an oath," the "word 'oath' shall be construed to include the word 'affirmation' " and "the word 'sworn' shall be construed to include the word 'affirmed.' " MCL 8.3k, MCL 600.1432(1), and MCL 600.1434 dovetail harmoniously. MCL 600.1434 specifies when an affirmation may be substituted for swearing an oath as required by § 1432(1). That is, an affirmation to tell the truth may be substituted for swearing an oath when a "person [is] conscientiously opposed to taking an oath." MCL 600.1434. Thus, § 1434 states a situation "where by law an affirmation may be substituted for an oath." MCL 8.3k. When the rule of construction required by MCL 8.3k is applied to the first sentence of MCL 600.1432(1) in a case where a person conscientiously opposes taking an oath, it reads: "The usual mode of administering [affirmations] now practiced in this state, by the person who [affirms] holding up the right hand, shall be observed in all cases in which an [affirmation] may be administered by law except as otherwise provided by

law." Accordingly, § 1432(1), construed as MCL 8.3k dictates and read together in harmony with § 1434, requires that an affirmation be made with the significant and readily observable act of raising one's right hand.

The majority supports its contrary conclusion by citing MRE 603, suggesting that as a rule governing practice and procedure it trumps the hand-raising requirement of the statutory scheme. But the issue of our Supreme Court's constitutional supremacy regarding adopting rules of practice and procedure is not reached unless a clear conflict exists between MRE 603 and the statutory hand-raising provision at issue. See *McDougall v Schanz*, 461 Mich 15, 24-26; 597 NW2d 148 (1999). The rules of statutory construction apply equally to court rules. *Hinkle v Wayne Co Clerk*, 467 Mich 337, 340; 654 NW2d 315 (2002). Thus, undefined terms in court rules are assigned their ordinary meanings, consulting a dictionary if necessary. *Haynes, supra* at 36. The subject of MRE 603 is what "every witness shall be required to *declare*" before he testifies. (Emphasis added.) The ordinary meaning of "declare" is to state or make known by means of words. "Declare" is similarly defined in *Random House Webster's College Dictionary* (2000) as: "1. to make known; state clearly, esp. in explicit or formal terms[;] 2. to announce officially; proclaim[;] 3. to state emphatically[; and] 4. to reveal; indicate . . . ." Thus, the plain text of MRE 603 does not address the statutory hand-raising requirement, only what a witness must say during the swearing of an oath or an affirming to tell the truth. Specifically, MRE 603 requires only that the words of an oath or affirmation "declare that the witness will testify truthfully . . . in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so."

Just as MRE 603 requires no particular form of words to swear or affirm, our Supreme Court has similarly interpreted the predecessor of MCL 600.1432(1). In *People v Mankin*, 225 Mich 246; 196 NW 426 (1923), the Court addressed 1915 CL 12568, which then read: "The usual mode of administering oaths now practiced in this State, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except in the cases herein otherwise provided." The question presented in *Mankin* was whether a valid oath was administered when the words "so help you God" were omitted. The Court held that the words were not required and opined, "It will be observed that this statute does not require any particular form for an oath; it provides only that the party shall swear holding up the right hand." *Mankin, supra* at 252. So, there is no conflict between MRE 603 and MCL 600.1432(1).

Likewise, the majority's reliance on federal caselaw to support its position is unavailing. The plain text of MCL 600.1432(1) cannot be overcome by federal decisions interpreting federal rules that adopt the common law. This Court must "presume that the Legislature is aware of the common law that legislation will affect; therefore, if the express language of legislation conflicts with the common law, the unambiguous language of the statute must control." *Lewis v LeGrow*, 258 Mich App 175, 183-184; 670 NW2d 675 (2003).

In *Gordon v Idaho*, 778 F2d 1397, 1400 (CA 9, 1985), the Ninth Circuit Court of Appeals held that the district court abused its discretion by ruling that a witness must "use either the word 'swear' or 'affirm'" for a valid oath or affirmation. Neither the pertinent federal rules at issue in *Gordon* nor the applicable federal statute contains a hand-raising requirement like Michi-

gan's statute. A federal case interpreting a federal rule not containing a specific provision contained in a Michigan statute is neither authoritative nor persuasive when interpreting the Michigan statute. *Abela v Gen Motors Corp,* 469 Mich 603, 606-607; 677 NW2d 325 (2004).

In *United States v Looper,* 419 F2d 1405 (CA 4, 1969), the court addressed FR Crim P 26, which provided that "except when an act of Congress or the criminal rules otherwise provide, '[t]he admissibility of evidence and the competency and privileges of witnesses shall be governed * * * by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.' " *Looper, supra* at 1406. Thus, *Looper* applied "the common law, as made applicable by Rule 26," concluding that it "requires neither an appeal to God nor the raising of a hand as a prerequisite to a valid oath. All that the common law requires is a form or statement which impresses upon the mind and conscience of a witness the necessity for telling the truth." *Looper, supra* at 1407. But here, the common law is not at issue. Rather, the present case presents the specific requirements of MCL 600.1432(1), which this Court has already determined are mandatory and not merely directory. See *Dawson v Secretary of State,* 44 Mich App 390, 392-393; 205 NW2d 299 (1973).

At issue in *Dawson* was whether a police officer had submitted a proper sworn statement of Dawson's refusal to submit to a breath test after a traffic accident. "The officer signed the report and handed it to a Detroit police sergeant who signed it as 'clerk of record'. The officer did not, however, raise his right hand and swear to the authenticity of the information in the report." *Dawson, supra* at 391. This Court held that the officer

had not submitted a sworn statement because the statutory requirements were mandatory and not merely directory. *Id*. at 392-393. The *Dawson* decision is contrary to the apparent general rule stated in 58 Am Jur 2d, Oath and Affirmation, § 22, p 888: "The ceremony of holding up the hand is not essential to the validity of the oath of a witness, the provision of the statute as to this form being merely directory." But the treatise also notes the existence of "contrary authority where, pursuant to an express statute, the usual mode of administering an oath is by the person who swears holding up his right hand, failing which there is no formal valid oath." *Id*., citing *Dawson, supra*. Consequently, both *Gordon* and *Looper* are inapposite. They provide no support to avoid application of the plain text of MCL 600.1432(1), even if it is contrary to the common law. *Lewis, supra* at 183-184.

Having concluded that the plain text of Michigan's statutory scheme requires a prospective witness before testifying to raise his or her right hand to either swear or affirm to tell the truth, it is necessary to reach the constitutional issue this appeal presents. I would hold that the statutory hand-raising requirement violates neither the First Amendment of the United States Constitution nor Const 1963, art 1, § 4, which provides:

> Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. No money shall be appropriated or drawn from the treasury for the benefit of any religious sect or society, theological or religious seminary; nor shall property belonging to the state be appropriated for any such purpose. The civil and

political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief. [Const 1963, art 1, § 4.]

Likewise, the Establishment Clause and Free Exercise Clause of the First Amendment of the United States Constitution provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." US Const, Am I.

"[B]oth the state and federal provisions of the Establishment Clause and Free Exercise Clause of the First Amendment of the United States Constitution, are subject to similar interpretation." *Scalise v Boy Scouts of America*, 265 Mich App 1, 11; 692 NW2d 858 (2005). A three-pronged test is used to determine the constitutionality of suspect state action. " 'First, the [state action] must have a secular . . . purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the [state action] must not foster 'an excessive government entanglement with religion.' " *Id.* at 11-12, quoting *Lemon v Kurtzman*, 403 US 602, 612-613; 91 S Ct 2105; 29 L Ed 2d 745 (1971).

As opposed to swearing an oath, which has a religious aspect of invoking a Supreme Being when promising to tell the truth, raising one's right hand has a secular origin and fosters the secular purposes of reinforcing the solemnity of the occasion and ensuring truthful testimony by permitting those who testify falsely to suffer the pains of a perjury prosecution. In *Mankin, supra*, our Supreme Court discussed the disparate origins of the swearing and hand-raising requirement set forth in the predecessor of MCL 600.1432(1), 1915 CL 12568. In holding that the statute required no particular form of words, the *Mankin* Court opined:

It will be observed that this statute does not require any
particular form for an oath; it provides only that the party
shall swear holding up the right hand. The act of raising
the right hand while taking an oath was originally adopted
from the Roman practice. It was there required that one
guilty of perjury should be branded on the right hand.
When a person presented himself as a witness in a Roman
court he was required to hold up the right hand so that the
judge might see whether he had been branded for perjury.
Needless to say the act of holding up the right hand while
taking an oath has an entirely different significance in our
practice. We have come to regard the uplifted hand accom-
panied by solemn swearing as an appeal to God for the
truth of what the witness is about to testify. The words
"You do solemnly swear" in and of themselves import a
serious appeal to God. When addressed to the taker of an
oath, who stands with uplifted hand, they signify that he is
bound in conscience to tell the truth. Nothing further is
necessary. While it might be the better practice to conclude
the oath with the words "So help you God," we think they
are not absolutely essential to its validity. [*Mankin, supra*
at 252.]

As noted already, this Court discussed the impor-
tance of the uplifted right hand in *Dawson*. In holding
that a validly administered oath was an essential ele-
ment of perjury, the *Ramos* Court cited *Dawson* with
approval. *Ramos, supra* at 550. The Court also cited
other Michigan cases in which the uplifted hand was an
integral requirement of a valid oath. For example, in *In
re Bennett*, 223 F Supp 423 (WD Mich, 1963), Bennett
"had not orally acknowledged, with upraised right
hand, an orally administered oath"; therefore, an affi-
davit he signed was invalid. *Ramos, supra* at 550.
Likewise, the Court recognized that as discussed in
*Mankin*, "the statute . . . requires some form of oral
admonishment, which the oath taker receives and ac-
knowledges with an upraised right hand." *Ramos, su-
pra* at 549. For the reasons discussed earlier, I can only

conclude that the secular purposes of an uplifted hand apply equally to affirmations and oaths.

More importantly, the statute requires an external, "significant and readily observable act or acts" intended to impress on the witness the importance of telling the truth. *Ramos*, *supra* at 548. "The statutory form of oath is designed to be sufficiently distinct so that it is recognizable by the oath taker and any observers as a clear acknowledgment of the oath taker's assumption of responsibility for providing truthful information." *Id.* at 552. "One of the primary functions of an oath is to place the oath taker on notice that he violates his oath at the risk of incurring severe penalties." *Id.* at 553. These are both secular purpose for requiring the visible, external act of raising one's right hand that apply equally to affirmations. Accordingly, the first prong of the test set forth in *Scalise* is satisfied. The hand-lifting requirement of § 1432(1) has the secular purpose of fostering truthful testimony through an observable act that adds to the solemnity of the occasion and subjects untruthful witnesses to a possible perjury prosecution.

Because the principal or primary effect of requiring an uplifted hand neither advances nor inhibits religion, the second prong of the test is also satisfied. As discussed in *Mankin*, *supra* at 252, the custom of requiring an uplifted hand apparently has its origins in the secular courts of Rome and is directly linked to the secular goal of preventing perjury. Even accepting Donkers' statement that lifting her hand is contrary to her religious beliefs, which this Court must,[1] the fact

---

[1] Const 1963, art 1, § 18 provides: "No person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief." MCL 600.1436 provides: "No person may be deemed incompetent as a witness, in any court, matter or proceeding, on account of his opinions on the subject of religion. No witness may be questioned in relation to his opinions on religion, either before or after he is sworn."

remains that the *principal or primary effect* of requiring
an uplifted hand neither advances nor inhibits religion.
In addition, Donkers was not compelled to participate
in Michigan's court system. Indeed, she voluntarily
chose to bring suit in a Michigan court. Thus, she must
abide by Michigan's laws and court rules.

The facts of this case also satisfy the final prong of
the test discussed in *Scalise*. The statutory require-
ment of an uplifted hand does not foster "an excessive
government entanglement with religion." Indeed, the
requirement of lifting one's hand applies to all wit-
nesses regardless of the witness's belief system; con-
sequently, it creates no entanglement with religion.
See *Scalise, supra* at 19. Our Supreme Court, citing
*Employment Div, Dep't of Human Resources of Oregon
v Smith*, 494 US 872; 110 S Ct 1595; 108 L Ed 2d 876
(1990), has noted "that generally applicable, religion-
neutral laws that have the effect of burdening a
particular religious practice need not be justified,
under the Free Exercise Clause, by a compelling
governmental interest." *Greater Bible Way Temple of
Jackson v City of Jackson*, 478 Mich 373, 380; 733
NW2d 734 (2007). In *Smith*, "the United States
Supreme Court held that Oregon's prohibition of the
use of peyote in religious ceremonies, and the denial
of unemployment benefits to persons discharged for
such use, does not violate the Free Exercise Clause of
the First Amendment." *Id.* The *Smith* Court's obser-
vation is instructive in the present case:

> It may fairly be said that leaving accommodation to the
> political process will place at a relative disadvantage those
> religious practices that are not widely engaged in; but that
> unavoidable consequence of democratic government must
> be preferred to a system in which each conscience is a law

unto itself or in which judges weigh the social importance
of all laws against the centrality of all religious beliefs.
[*Smith, supra* at 890.]

In sum, while the Legislature, through the political
process, has enacted a statutory scheme that accommo-
dates religious objections to swearing an oath, it has not
and need not constitutionally accommodate plaintiff's
individual religious beliefs. From the foregoing analy-
sis, I conclude that the hand-lifting requirement of
MCL 600.1432(1) violates neither the Establishment
Clause nor the Free Exercise Clause of the First
Amendment, and also does not violate Const 1963, art
1, § 4.

Next, it is necessary to address whether the trial
court abused its discretion by dismissing this case. "The
Michigan Court Rules at MCR 2.313(B)(2)(c) explicitly
authorize a trial court to enter an order dismissing a
proceeding or rendering a judgment by default against a
party who fails to obey an order to provide discovery."
*Bass v Combs*, 238 Mich App 16, 26; 604 NW2d 727
(1999). A trial court abuses its discretion when its
decision falls outside the principled range of outcomes.
*Casey v Auto Owners Ins Co*, 273 Mich App 388, 404;
729 NW2d 277 (2006), citing *Woodard v Custer*, 476
Mich 545, 557; 719 NW2d 842 (2006).

I conclude that the trial court had the legal authority
to dismiss this case and did not abuse its discretion by
doing so upon plaintiff Donkers' refusal to comply with
the statutory procedure to affirm to tell the truth at her
deposition. I would also hold that the dismissal was not
plain error warranting reversal with respect to plaintiff
Barnhill. The essence of plaintiff Donkers' complaint in
the present case comes from an attempt to obtain
restitution of a nonrefundable retainer fee on a written
contract for legal services pertaining to Donkers' al-

ready filed lawsuit against one Leslie Neal. The complaint also sought "the benefit of the bargain" of the contract for legal services even though Donkers fired defendant three months after entering the contract during a deposition regarding her claim against Neal. Donkers also sought any actual and exemplary damages she might have been awarded against Leslie Neal. Barnhill, however, was not a party to the legal services contract. The complaint alleges only that Donkers and Barnhill purport to be common-law spouses. The complaint further indicates plaintiffs' religious belief that husband and wife are "one flesh" and mentions the common-law doctrine of "coverture."[2] On these doctrines, apparently, plaintiffs style their complaint as husband and wife in the singular "plaintiff." The only allegation regarding Barnhill individually with respect to the legal services contract with defendant is that Barnhill gave Donkers his "oral consent" and "advice" to accept defendant's offer of legal services. So, to the extent that Donkers' claim is contractual, Barnhill is not a party to the contract, so he has no independent claim against defendant. Likewise, even if Donkers' claim against defendant were for fraud or malpractice, Barnhill has no independent claim. With respect to the latter claim, it is clear that Donkers cannot prove any

---

[2] See *State v Donkers*, 170 Ohio App 3d 509, 518, 553-554; 867 NE2d 903 (2007). "At common law, a married woman, by her coverture, enjoyed no individual rights pertaining to the property she may have owned before the marriage or acquired during the marriage. The state of coverture was virtually a legal disability whereby a woman lost the capacity to contract, sue, or be sued individually." *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 398; 578 NW2d 267 (1998). The married women's property acts enlarged married women's property and contractual rights, and removed some of the disabilities of coverture. See MCL 557.21 *et seq*. Also, Michigan's 1963 Constitution abolished the disabilities of coverture with respect to property. *In re Miltenberger Estate*, 275 Mich App 47, 51; 737 NW2d 513 (2007); Const 1963, art 10, § 1.

damages because the underlying suit against Neal was, after Donkers fired defendant, tried to a verdict of no cause of action.[3] Given Donkers' adamant refusal to affirm to tell the truth in accordance with MCL 600.1432(1), the trial court did not abuse its discretion by dismissing her case.

Any procedural error by the trial court in dismissing this case with respect to Barnhill does not warrant reversal because his rights were not materially affected, MCR 2.611(A)(1), and the dismissal is not inconsistent with substantial justice. MCR 2.613(A); *Chastain v General Motors Corp*, 467 Mich 888 (2002). Moreover, this Court "will not reverse the decision of a trial court if it reached the right result, albeit for the wrong reason." *Ellsworth v Hotel Corp of America,* 236 Mich App 185, 190; 600 NW2d 129 (1999).

For all the foregoing reasons, I would affirm.

---

[3] Donkers' underlying claim against Neal was tried to a verdict of no cause of action that was entered on January 11, 2006. This Court dismissed Donkers' untimely appeal. *Donkers v Neal,* unpublished order of the Court of Appeals, entered May 26, 2006 (Docket No. 270310).