*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAJUAN JOSEPH JEMISON,

        Defendant-Appellant.

UNPUBLISHED
July 16, 2019

No. 341720
Wayne Circuit Court
LC No. 16-008124-01-FC

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f), for forcefully raping and injuring TP. On appeal, defendant raises several challenges to trial counsel's performance, the admission of identification evidence, and the oath given to witnesses by the trial court. All lack merit. We affirm.

## I. BACKGROUND

Defendant met TP on a phone dating chat-line or an internet dating site. The two talked on the phone regularly for four or five months and once met at a park where TP was playing with her children. On January 5, 2009, TP told defendant that she had recently lost her job and defendant invited himself over to watch a movie; this was only their second meeting. When defendant arrived, TP's children were asleep in the next room and the pair settled onto the couch. Defendant then told TP that he wanted to have sex and would not leave unless TP complied.

TP described that defendant forcibly removed her clothing and pulled her partially off the couch. Defendant shoved TP face-down on the floor, pinned her down by placing his forearm on her neck, and penetrated TP's anus with his penis. Defendant flipped TP over and penetrated her vaginally. He then forced TP to perform fellatio. Afraid of traumatizing her children, TP remained quiet and did not fight back during these events. Defendant, on the other hand, claimed that the intercourse was consensual. He asserted that he had prearranged to pay TP $100 for vaginal, anal, and oral sex. Afterward, defendant instructed TP to give him a washcloth. Defendant stole TP's cell phone while she was out of the room. On his way out of the home, defendant threatened TP that he could kick her door in.

-1-

Approximately 20 minutes after defendant left, TP called 911 on her home phone. Unfortunately, she did not know defendant's real name, delaying his identification. TP was transported to the emergency room where doctors noted anal bleeding and vaginal tearing. TP was required to use stool softeners for several months until her rectum healed. A nurse also conducted a rape kit. Testing finally conducted in 2012 connected defendant to the seminal fluid on TP's vaginal swab. Defendant was excluded as a donor on the anal swab, however.

Despite defendant's 2012 DNA identification, law enforcement did not show TP a photographic lineup until 2016. Noting the "crazy eyes" like her assailant, TP selected two pictures; one was defendant. At the September 20, 2016 preliminary examination, TP indicated that she could not identify her assailant in the courtroom, stating, "I can't recall, because it's been like almost seven years." At trial, however, TP definitively identified defendant. As noted, defendant claimed at trial that his interaction with TP was consensual. The jury rejected this theory and convicted defendant as charged.

## II. ASSISTANCE OF COUNSEL

Defendant contends that his appointed trial attorney was ineffective because there was a breakdown in communication regarding his bond, counsel ignored defendant's request to present a medical witness, counsel did not impeach TP with her prior inconsistent statements, and counsel told defendant not to reveal that TP's boyfriend arrived during the encounter. Defendant sought remand to the trial court for an evidentiary hearing, but this Court denied his request. *People v Jemison*, unpublished order of the Court of Appeals, entered October 11, 2018 (Docket No. 341720). Defendant renewed his motion for remand on appeal, but we have concluded that his ineffective assistance claims may be assessed based on the existing record.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). " '[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 777 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a convicted defendant's claim of ineffective assistance includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 N.W.2d 761 (2004). With respect to the prejudice prong, the defendant must demonstrate a reasonable probability that but for counsel's errors the result of the proceedings would have differed. *Id*. at 663-664. But "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant first challenges defense counsel's failure to respond to his request to file a motion to change the conditions of his bond. Defendant cannot establish prejudice, however, as defendant personally and successfully petitioned for the removal of his tether restrictions.

Defendant contends that counsel should have presented medical evidence to counter TP's claim of injury. Appellate counsel notes that trial counsel did not present his case file upon request and that no defense witness list appears in the lower court file. We do not condone trial counsel's failure in this regard. However, the record does not support that he was ineffective. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). A substantial defense is one that may have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

"Personal injury" is a necessary element to establish CSC-1 under MCL 750.520b(1)(f). *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). The prosecution established this element through TP's medical records and the testimony of Elaina Rouse, the sexual assault nurse who examined TP. Rouse testified that TP "had significant genital trauma, both vaginally and anally." TP further testified that she was required to use stool softeners for several months until she was healed. It is unlikely that any other professional who contemporaneously examined TP would testify differently. And no independent examiner would be able to disprove Rouse's diagnosis seven years after the fact.

In any event, defendant was not denied a defense; counsel merely chose a different tactic. Defense counsel did not deny that defendant and TP had a sexual encounter or that TP was injured as a result. Rather, counsel argued that the interaction was consensual. "The law does not require counsel to raise every available nonfrivolous defense." *Knowles v Mirzayance*, 556 US 111, 127; 129 S Ct 1411; 173 L Ed 2d 251 (2009). Indeed, the decision to advocate for one defense over another is considered a matter of trial strategy. *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987). Given the existing medical evidence, focusing on consent rather than injury was a sound decision.

Defendant argues that counsel should have impeached TP with her prior inconsistent statements. A careful review of defense counsel's cross-examination of TP, however, reveals that counsel did attempt to impeach TP in this manner. Defense counsel confronted TP with her police statement, which diverged from her trial testimony in several respects, including the length of time TP knew defendant, what time defendant came to her house, and whether the two watched a movie.

Defendant asserts that defense counsel failed to challenge TP's identification of him at trial, despite her inability to identify him at the preliminary examination. Defense counsel actually did address this issue, but TP explained that she did not recall being unable to identify defendant before. In any event, identity was a nonissue in this case. DNA evidence established that defendant had at least vaginally penetrated TP. Likely because of this conclusive evidence, defense counsel pursued a consent defense, rather than denying defendant's identity as the perpetrator. Consistent with this defense, defendant admitted at trial that he was the individual who came to TP's house on the night in question and engaged in sexual relations. There was no reason to challenge TP's identification further.

Defendant asserts that counsel ineffectively advised him not to testify that TP's boyfriend came home during their interaction. Defendant describes that TP's "boyfriend c[ame] into the house while he was partially undressed." In defendant's view, this evidence supports that his meeting with TP was only a "business transaction," rather than a "several month long friendship." "If the boyfriend were angry, she may have claimed that it was an assault, to get herself off the hook with him." The boyfriend's sudden arrival provided an alternate explanation for TP's genital injuries and could identify the source of the seminal fluid on TP's anal swab, defendant insists, and would further explain why TP waited 20 minutes to call 911 after he left. Absent any corroborating evidence, however, defense counsel could have concluded that defendant's proffered "boyfriend" defense would not have assisted his case. We cannot conclude that counsel's decision was deficient or that the introduction of this evidence likely would have swayed the jury. Accordingly, defendant cannot establish that his trial attorney was constitutionally deficient.

### III. WITNESS OATH

Defendant complains that the trial court failed to administer a proper oath to the trial witnesses. Our review is limited to plain error affecting defendant's substantial rights as he did not object to the form of the oath below. *People v Putnam*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

"[W]itnesses in judicial proceedings must swear or affirm that their testimony will be true." *Id*. Oaths are typically administered pursuant to MCL 600.1432(1), which provides:

> The usual mode of administering oaths now practiced in this state, by the person who swears holding up the right hand, shall be observed in all cases in which an oath may be administered by law except as otherwise provided by law. The oath shall commence, "You do solemnly swear or affirm".

MCL 600.1424 provides an exception: "Every person conscientiously opposed to taking an oath may, instead of swearing, solemnly and sincerely affirm, under the pains and penalties of perjury." MRE 603 also governs the practices and procedures for administering oaths:

> Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness'[s] conscience and impress the witness'[s] mind with the duty to do so.

"As the plain language of MRE 603 makes clear, no particular ceremonies, observances, or formalities are required of a testifying witness so long as the oath or affirmation 'awaken[s]' the witness's conscience and 'impress[es]' his or her mind with the duty to testify truthfully." *Donkers v Kovach*, 277 Mich App 366, 373; 745 NW2d 154 (2007) (alterations in original). To the extent that MRE 603 conflicts with MCL 600.1432(1) or MCL 600.1434, MRE 603 controls. *Donkers*, 277 Mich App at 373.

Here, the trial court asked the witnesses various forms of the following questions: Do you promise to answer truthfully, honestly, or accurately and do you promise to answer completely? Each witness answered in the affirmative. This Court approved the current trial judge's nearly

identical oath administration in *Putnam*. We discern no ground to reach a different result in this case.

Defendant further contends that counsel was ineffective for failing to object below. Given this Court's resolution in *Putnam*, counsel had no ground for objection. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. IDENTIFICATION OF DEFENDANT

Defendant contends that TP's identification of him at trial, after being unable to identify him at the preliminary examination, violated his rights to due process and to a fair trial. The in-court identification procedure, defendant asserts, was unduly suggestive as he was seated at the defense table. Defendant also argues that the prosecutor knew this definitive identification was false and elicited it anyway. Defendant failed to preserve these challenges below and our review is limited to plain error affecting defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"An identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). In order to challenge an identification on the basis of lack of due process, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *Id*. (quotation marks and citation omitted). "[A]n improper suggestion often arises when 'the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person,' or when 'the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person.' " *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998), quoting *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973), overruled in part on other grounds by *People v Hickman*, 470 Mich 602 (2004).

This Court reasoned in *People v Barclay*, 208 Mich App 670, 675-676; 528 NW2d 842 (1995) (citations omitted):

> The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive. At no point has defendant argued that the lineup procedure was improper or unduly suggestive. Rather, defendant's argument is premised on the fact that Byrd did not identify defendant at a pretrial corporeal lineup, but identified him in court (at the preliminary examination) as the man who poured the gasoline in the store. The fact that Byrd did not identify defendant at the lineup did not render his subsequent in-court identification inadmissible. Rather, this was a credibility issue that was properly before the jury to determine. The trial court did not commit clear error in allowing the in-court identification testimony.

Defendant similarly does not argue that the photographic array was improperly suggestive, and TP indicated that defendant could be her assailant from his picture. And TP's failure to identify defendant at the preliminary examination did not render her trial identification inadmissible; it merely created a credibility issue for the jury to resolve. *Id*.

In any event, defendant's seat at the defense table, by itself, was not impermissibly suggestive. "Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). Where there is no evidence that a pretrial identification procedure was unduly suggestive, "no independent basis for the identification need be established." *People v Syakovich*, 182 Mich App 85, 89; 452 NW2d 211 (1989). As noted, defendant does not challenge the pretrial photographic array. Accordingly, there was no need to establish an independent basis for TP's identification of defendant, and the trial court did not err by admitting the in-court identification.

We discern no misconduct on the prosecutor's part in eliciting this testimony either. "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "[A] conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment." *Id*. "Thus, it is the 'misconduct's effect on the trial, not the blameworthiness of the prosecutor, [which] is the crucial inquiry for due process purposes.' " *Id*. at 390, quoting *Smith v Phillips*, 455 US 209, 220 n 10; 102 S Ct 940; 71 L Ed 2d 78 (1982) (alteration in original).

The prosecutor was aware that TP selected defendant and another individual as her assailant during a photographic lineup and was unable to definitively state at the preliminary examination that defendant was the man who sexually assaulted her. Rather than eliciting a false identification at trial, the prosecutor attempted to reconcile the two prior identifications. The jury heard about the photographic lineup and the preliminary examination and therefore could reach its own conclusion regarding TP's credibility. Ensuring that the jury had all necessary and relevant information was not misconduct. Moreover, TP's eyewitness identification was not necessary in this case as DNA evidence connected defendant to the assault, and defendant admitted having had sexual relations with TP. The prosecutor could have pursued charges even if TP was unable to identify her assailant throughout. The in-court identification, even if imperfect, therefore was not overly prejudicial or outcome-determinative.

We affirm.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

-6-